725 So.2d 10 (1998)
Gloria SCOTT and Deania M. Jackson, et al.
v.
The AMERICAN TOBACCO COMPANY, et al.
No. 98-CA-0452
Court of Appeal of Louisiana, Fourth Circuit.
November 4, 1998.
Rehearing Denied March 1, 1999.
Robert L. Redfearn, Simon, Peragine, Smith & Redfearn, New Orleans, Louisiana, and Wendell H. Gauthier, Gauthier, Downing, LaBarre, Beiser & Dean, Metairie, Louisiana, and Stephen B. Murray, Murray Law Firm, New Orleans, Louisiana, and Walter J. Leger, Jr., Leger & Mestayer, New Orleans, Louisiana, Attorneys for the Plaintiffs/Appellees.
Phillip A. Wittmann, Stephen H. Kupperman, Stone, Pigman, Walther, Wittmann & *11 Hutchinson, New Orleans, Louisiana, and Jerome R. Doak, Margaret I. Lyle, Jones, Day, Reavis & Pogue, Dallas, Texas, and Scott F. Delacroix, Charles F. Gay, Jr., Deborah B. Rouen, Adams and Reese, L.L.P., New Orleans, Louisiana, and Gary R. Long, James P. Muehlberger, Jennifer L. Brown, Shook, Hardy & Bacon, L.L.P., Kansas City, Missouri, and Steven W. Copley, John M. McCollam, Gordon, Arata, McCollam & Duplantis, L.L.P., New Orleans, Louisiana, and Charles W. Schmidt, III, C. Edgar Cloutier, III, Christovich & Kearney, L.L.P., New Orleans, Louisiana, and Charles L. Chassaignac, Carmelite M. Bertaut, Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P., New Orleans, Louisiana, and Richard A. Schneider, Michael R. Powers, King & Spalding, Atlanta, Georgia, and Alan H. Goodman, Thomas M. Benjamin, Lemle & Kelleher, L.L.P., New Orleans, Louisiana, and Joy G. Braun, John W. Hite, III, Sessions & Fishman, L.L.P., New Orleans, Louisiana, and D. Scott Wise, Vincent Chang, Davis, Polk & Wardwell, New York, New York, Attorneys for Defendants/Appellants.
Court composed of Judge WILLIAM H. BYRNES, III, Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY, III.
BYRNES, Judge.
Defendants,[1] all cigarette manufacturers, appeal a judgment certifying a class action, defining the members of the class, designating the two named plaintiffs herein as the representatives of that class, naming an interim plaintiffs' committee, providing for notice to the putative class, and dismissing all cigarette distributor defendants.[2] This appeal is limited to those portions of the April 16, 1997 judgment granting plaintiffs' motion for class certification and definition of the class. We affirm.
The judgment of April 16, 1997 ordered that:
a class be certified herein defined as all Louisiana residents who are or who were smokers on or before May 24, 1996, of cigarettes manufactured by the defendants, who desire to participate in a program designed to assist them in the cessation of smoking and/or to monitor the medical conditions of class members to ascertain whether they may be suffering from diseases caused by, contributed to, or exacerbated by the habit of cigarette smoking, provided the class member alleges that he or she commenced smoking before September 1, 1988 or that one or more defendants actively or intentionally engaged in a course of conduct designed to undermine or eliminate compliance with or attention to warnings on cigarette packaging.
The judgment states that the "Court hereby reserves unto plaintiffs and members of this defined class the right to assert any claims for damages they may have sustained as a result of smoking cigarettes."
The defendants contend that the trial court erred in certifying the class certification based on the following claims:
(1) Neither federal nor Louisiana law permits class certification of long-term, product liability, mass tort classes where individual issues predominate;
(2) The federal district court denied class certification to the same two named plaintiffs in Castano v. American Tobacco Company, 84 F.3d 734 (5 Cir. 1996);
(3) The trial court ignored the individual issues, including causation, reliance *12 and affirmative defenses, which are necessary to prove liability;
(4) The trial court failed to consider how to comply with choice-of-law requirements, or recognizing that the application of the varying laws of different states would defeat the predominance and manageability requirements for class certification;
(5) The trial court failed to define the class subjectively, and mistakenly provided for a reservation of rights that destroys judicial efficiency and the res judicata effect of a judgment; and
(6) Certification of the class is erroneously based on novel, untested theories and immature torts.
The judgment certifying the class in this case is appealable. Eastin v. Entergy Corp., 97-1094 (La.App. 5 Cir. 4/15/98), 710 So.2d 835. A trial court has great discretion in deciding whether to certify a class, and its decision will not be overturned absent manifest error. Adams v. CSX Railroads, 92-1077 (La.App. 4 Cir. 2/26/93), 615 So.2d 476.
In the present case at the time that the action was filed in June 1996, La. C.C.P. arts. 591 and 592 provided that the basic requirements of a class action included:[3]
(1) A class so numerous that joinder is impracticable;
(2) The joinder of parties who are members of the class and who are able to prove adequate representation for absent members;
(3) A "common" character among the rights of the representatives of the class and the absent class members.
Andry v. Murphy Oil, U.S.A., Inc., XX-XXXX-XX-XXXX (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, writ denied, 98-1158 (La.6/19/98), 720 So.2d 1213, writ denied 98-1178 (La.6/19/98), 720 So.2d 1214, and writ not considered, 98-1204 (La.6/19/98), 719 So.2d 473.
Certification of the class in this case is proper because it essentially boils down to one fundamental question: Is a cigarette that contains nicotine a defective product? There should be one answer to this question, and the only practical vehicle that can effectively arrive at one consistent answer is the class action procedure.
Ford v. Murphy Oil U.S.A., Inc., 96-2913 (La.9/9/97), 703 So.2d 542, and Castano v. American Tobacco Co., 84 F.3d 734 (5 Cir. La.1996), are the two cases having the most bearing on the outcome of the instant case. Of the two, Ford, as the most recent pronouncement by the Louisiana Supreme Court on the question of class action certification, is controlling.
Ford admonishes us that historically, certification of mass tort litigation classes has been disfavored. Id., p. 15; 703 So.2d at 550. We are also admonished in Ford, quoting from Castano, that:
In the context of mass tort class actions, certification dramatically affects the stakes for defendants. Class certification magnifies and strengthens the number of unmeritorious claims. Aggregation of claims also makes it more likely that a defendant will be found liable and results in significantly higher damage awards.
In addition to skewing trial outcomes, class certification creates insurmountable pressure on defendants to settle, whereas individual trials would not. The risk of facing an all-or-nothing verdict presents too high a risk, even when the probability of an adverse judgment is low.

Ford, p. 15; 703 So.2d at 550.
Ford denied class certification. The class in Ford consisted of residents in the vicinity of four petrochemical plants who alleged injury as result of a "synergistic accumulation or combination" of "continuous emissions, combined and individual," which caused varying individual damages to the defendants. Id. at 543. Thus, Ford dealt not only with a combination of substances emitted by different defendants, but combinations that according to the plaintiff class' own allegations might involve different combinations for every member of the supposed class as well as *13 effects that would have been different for each member of the class.
In the instant case we are concerned basically with one substance only, nicotine, and one effect only, addiction. Therefore, Ford is distinguishable from the instant case. We find that the reasoning in McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612 (La.1984), is applicable to the instant case where the court held that it did not matter that each member of the class was not harmed on the same date or sustained the same amount of injury. Tracing the complaint of the class in the instant case to a single source, nicotine, is consistent with the admonition found in Ford that "only mass torts `arising from a common cause' ... may be appropriate for class certification..." Id., 703 So.2d at 550.
The Ford court objected to the "synergy" theory as a novel and untested theory of law. The instant case relies on proving the addictive qualities of nicotine, which, although apparently never proved before in a reported opinion as a matter of fact does not rely upon any novel theories of law. Ford refers to Castano in its rejection of novel theories of law, but Castano appears to involve more of a novel theory of fact. We are not persuaded by Castano on this point, which as explained later in this opinion was not the primary factor upon which the Castano court based its decision. We assume that the facts of many, if not most cases, are distinguishable in some way, and the Castano reasoning, if carried to its logical conclusion, would eliminate class actions altogether. We find it significant that Castano alluded to no authority in support of its novel theory about novel theories.
We prefer the reasoning of the Louisiana Supreme Court in Ford where the Court stated that:
Plaintiffs [sic] "synergy theory" is novel and untested.
Whether a cause of action against more than one defendant can be sustained under C.C. arts. 667-669 has never been decided. [Footnote omitted.] Furthermore, it is unclear whether plaintiffs can prove that the emissions of the four defendant companies (or the two remaining defendant companies) indeed do combine "synergistically" to cause damage to their surrounding neighbors. Thus, it is unclear what common issues of law or fact will exist in such a case and thus it is unproven whether trying the case as a class action would be superior to trying the case in several individual or consolidated actions.

Id., p. 16; 703 So.2d at 551.
Unlike Ford, in the instant case the plaintiffs are not urging a novel legal theory, and there are clear common issues of fact surrounding the questions of nicotine addiction in dramatic contrast to the factual confusion that existed in Ford where the plaintiffs were exposed to different combinations of emissions with potentially unlimited permutations and combinations of effects and damages. To repeat, in the instant case we are talking about basically one substance, nicotine, and basically one effect, nicotine addiction.
Castano rejected the certification of a class for nicotine addiction. However, that refusal to certify was based primarily on what the Castano court viewed as the virtually insurmountable problems that would be posed by trying to conduct such litigation on a national basis. That problem is minimized in the instant case by limiting the class to Louisiana residents only. Moreover, the Castano court noted that:
The most compelling rationale for finding superiority in a class actionthe existence of a negative value suitis missing in this case....
* * *
First, individual damage claims are high, and punitive damages are available in most states.

Id., at 748.
In making this observation the Castano court relied upon In Re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293 (7 Cir. Ill.1995), where it was noted that each plaintiff was likely to recover millions of dollars. In the instant case, where the potential recovery is limited to monitoring and does not include a claim for punitive damages, we find that the most *14 compelling rationale for superiority of the class action has been met. We see no other economically reasonably feasible way for the members of the class to pursue this litigation.
In Eastin v. Entergy Corp., 97-1094 (La. App. 5 Cir. 4/15/98), 710 So.2d 835, the Fifth Circuit reversed the class action certification where employees of Entergy Corporation and some of its subsidiaries claimed that they were unlawfully discharged because of their ages. That court found a lack of commonality because the sample plaintiffs worked for Entergy, LP & L or NOPSI, or subsidiaries in different departments with different evaluation processes, which created individual and particular issues. The appellate court stated: "as defined the class included all persons in the protected age group whose employment terminated including those who left because of normal voluntary retirement or to obtain other employment, or for health or other reasons having nothing to do with the cause of action before the court.... In the case before us, the causation of the various claims regarding discharge of the employee are varied, and as pointed out above, sometimes not even apparent." Id. at 841.
In the present case, the complaint can be traced to a single source, nicotine, and to one effect, addiction. Liability is derived from a common theory. Proof of the addictive quality of nicotine is essential in the claims of all the plaintiffs so that there is a common character among the rights of the representatives and the absent members of the class for a proper class action.
In Andry v. Murphy Oil, U.S.A., Inc., XX-XXXX-XX-XXXX (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, writ denied, 98-1158 (La.6/19/98), 720 So.2d 1213, writ denied 98-1178 (La.6/19/98), 720 So.2d 1214, and writ not considered, 98-1204 (La.6/19/98), 719 So.2d 473, this court upheld the certifying a class action involving claims filed in relation to fire, explosion and emissions at an oil refinery which occurred when employees attempted to restart units which had shut down due to a short circuit at a physical plant in Meraux, Louisiana.
This court found that initially, "because of the potentially large number of de minimis claims, a class would allow access to the courts for claimants who ordinarily might not be able to litigate due to the relative size of their claims when compared with the expense of litigation." Id. at 1130.
Secondly, "the claims of the persons specified as class representatives equally represent a cross-section of the claims made." Id. This court noted:
... The claims asserted by the class representatives include claims for evacuation, inconvenience, mental anguish and suffering, fear, anxiety, emotional distress, and economic damages for broken windows, removal of soot and debris, medical expenses, and business interruption. Although a claim by a particular class representative with regard to the exact damage claimed may not be typical, the class of damages asserted by each representative is. We, therefore, find nothing in the record to support the defendants' argument that the class representatives will not adequately represent the absent class members.

Id. at 1130-31.
Thirdly, the common character requisite which requires that the party seeking a class action certification must establish that questions of law and fact are common to the members of the class must dominate over individual members. Class actions are limited to cases in which it would achieve economics of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. Id. at 1131.
In Andry this court distinguished Ford, supra, noting that Ford involved a class of plaintiffs suing four different and distinct entities, claiming that the emissions and pollutants each entity released into the environment over a period of time had a synergistic, damage-causing impact on the community. In Ford, the Louisiana Supreme Court concluded that the nature of the claims would require that each class member prove different facts to establish that the defendants' liability, either individually or combined, caused plaintiffs specific damages on specific *15 dates. The case was complicated by the widely divergent types of damages involved.
The Andry court found that:
a common character of right exists among the claims asserted herein. This case involves a common disaster, and the alleged liability of the defendants is derived from the same theories of liability. There are no material variations in the elements of the claims of the various categories of class members. Although there obviously are individual questions of quantum, this does not preclude a class action where, as here, predominant liability issues are common to the class.

Id. at 1131.
Andry supports this court's finding previously noted in the present case that the complaint of the class is traced to a single source, nicotine, which is consistent with a mass tort arising from a common cause. Plaintiffs assert that the defendants' liability is caused by the singular act of the tobacco industry in selling a defective product after concealing the addictive nature of nicotine. A class action is the most effective way to efficiently and economically handle this claim. Although there obviously are individual questions of quantum, this does not preclude a class action where, as here, predominant liability issues are common to the class.
In Bourgeois v. A. P. Green Industries, Inc., 97-3188 (La.7/8/98), 716 So.2d 355, the Louisiana Supreme Court found that asymptomatic employees who had significant occupational exposure to asbestos and had to bear the expense of periodic medical examinations to monitor the effects of that exposure, suffered "damage," and therefore could bring an action to collect cost of medical monitoring.
The Supreme Court stated:
[W]hen a defendant's tortious act causes someone bodily harm and that person is made to incur medical expenses as a result, the law clearly affords recovery for these expenses. Hansen [v. Mountain Fuel Supply Co., 858 P.2d 970] at 976; Ayers v. Township of Jackson, 106 N.J. 557, 525 A.2d 287, 311 (N.J.1987). The reason these expenses are recoverable, however, is because defendant's fault caused plaintiff to incur them. This reasoning applies as persuasively to plaintiffs who have suffered physical injury as it does to those who have not. In either case, a plaintiff has suffered legal detriment in the form of costly medical bills. Hansen, 858 P.2d [at] 977. Because a plaintiff's liability for the bill will be same regardless of whether he or she manifest a physical injury, it makes little legal sense to compensate one plaintiff and not the other. Hence, as long as a plaintiff can demonstrate a need for medical testing arising out a defendant's tortious act, it logically follows that the defendant should make the plaintiff whole by paying the cost these examinations. Friends For All Children, Inc. v. Lockheed Aircraft Corp., 746 F.2d 816, 826 (D.C.Cir. 1984).
Id. at pp. 3-4, 359.
The Louisiana Supreme Court concluded that:
the reasonable cost of medical monitoring is a compensable item of damage under Civil Code article 2315, provided that a plaintiff satisfies the following criteria:[FN14]
(1) Significant exposure to a proven hazardous substance.
Exposure, as used in this factor means ingestion, inhalation, injection or absorption into the body by some other means....
(2) As a proximate result of this exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease. No particular level of quantification is necessary to satisfy the requirement of increased risk. Hansen, 858 P.2d at 979. The injury in question is plaintiff's demonstrated need for medical monitoring and the costs which correspond to such care. Hence, plaintiff need not prove a certain probability of actually suffering physical harm because of his or her exposure. It is sufficient that plaintiff show a significant degree of increased risk. Id. In addition, plaintiff must prove that the illness, the risk of which has been increased by exposure, is both serious and latent. By this we mean an illness that is dormant and, in *16 its ordinary course, may result in significant impairment or death. Id.
(3) Plaintiff's risk of contracting a serious latent disease is greater than (a) the risk of contracting the same disease had he or she not been exposed and (b) the chances of members of the public at large of developing the disease.
* * *
(4) A monitoring procedure exists that makes the early detection of the disease possible.
* * *
(5) The monitoring procedure has been prescribed by a qualified physician and is reasonably necessary according to contemporary scientific principles.
* * *
(6) The prescribed monitoring regime is different from that normally recommended in the absence of exposure.
* * *
(7) There is some demonstrated clinical value in the early detection and diagnosis of the disease.

Id. at pp. 4-5, 361.
In Footnote 2, the Supreme Court noted that:
the trial judge explicitly limited the claims under consideration to those of plaintiffs who have not been diagnosed with an asbestos related injury or disease, noting that it ultimately may be proper to exclude physically injured plaintiffs from the class. Consequently, for the purposes of this opinion, we will focus on plaintiffs' claims for medical monitoring expenses only as they relate to individuals seeking a postexposure, presymptom remedy. Defendants do not dispute the viability of a claim for future medical monitoring expenses by those plaintiffs already diagnosed with an exposure related disease.
Id. at 7, 357. [Emphasis added.]
In Footnote 12, the Supreme Court recognized that:
To prevent confusion, we note that a claim for recovery of medical monitoring expenses is separate and distinct from a claim for the enhanced risk of contracting a serious illness due to exposure. The enhanced risk claim seeks a damage award, not because of any expenditure of funds, but because a plaintiff contends that the unquantified injury to his or her health and life expectancy should be presently compensable, even though no evidence of disease is manifest Mauro v. Raymark Indus., Inc., 116 N.J. 126, 561 A.2d 257, 262-63 (N.J.1989). While this type of claim is inherently speculative, forcing courts to anticipate the probability of future illness or disease, a medical monitoring claim is much less so, the only issue for the factfinder being whether or not the plaintiff needs medical surveillance given the circumstances of his or her exposure. In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 851 (3 rd Cir.1990). The risk of speculation in a medical monitoring claim is further reduced because recovery is based upon the specific dollar costs of reasonable and necessary periodic examinations. Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795, 825 (Cal.1993).

Id. at 8, 359.
In Bourgeois, Footnote 15, the Supreme Court asserted that: "Recognition of a plaintiff's need for medical monitoring does not create a new tort." Id. at 9, 363. In his concurrence, Chief Justice Calogero agreed "that a claim for medical monitoring is a valid cause of action under Louisiana law." Id. at 6. The Supreme Court found that plaintiff's recovery of medical monitoring costs must be both reasonable and limited in duration to the maximum latency period. With respect to plaintiffs' claim for damages based on medical monitoring in the present case, the above requirements apply.
In his concurrence Justice Lemmon stated:
Under a duty-risk analysis, the defendants had a duty not to expose the plaintiffs to products that were unreasonably dangerous because of their asbestos content. *17 For purposes of the exception of no cause of action, the defendants breached that duty, and the conduct constituting a breach of duty was a cause-in-fact of damages sustained by the plaintiffs. [Fn omitted.]
The fourth element of the duty-risk analysis is, at least in this case, largely a policy questionwhether the duty imposed on the defendants not to expose the plaintiffs to these substances encompasses the risk that the plaintiffs may be required to undergo medical monitoring to facilitate early detection and possibly successful treatment of a disease that medical science at this stage cannot accurately predict will ensue. Because of the devastating consequences which often result from significant exposure to asbestos and the long-term latency of the serious diseases caused by asbestos, the reasonable cost of necessary medical monitoring should fall within the scope of liability for the defendant's breach of duty.

Id. at 6, 362. [Emphasis added.]
A cause of action for medical monitoring based on the claim that material containing asbestos is a defective product, which defect was concealed by defendants, and which could cause serious diseases after significant exposure, is comparable to the present plaintiffs' cause of action for medical monitoring based on the claim that a cigarette containing nicotine is a defective product, which defect was concealed by the defendants, and which could cause serious diseases after significant exposure.
In the present case, we conclude that in accordance with Bourgeois, as a matter of policy, because of the devastating consequences which often result from significant exposure to addictive nicotine in cigarettes, as well as the long-term latency of the serious diseases caused by nicotine, the reasonable cost of necessary medical monitoring should fall within the scope of defendants' liability. The program for medical monitoring should include not only a plan for monitoring the effects of nicotine in causing serious diseases but should also be designed to assist addicted smokers in cessation of smoking because it is fundamentally necessary where the product contains a substance, nicotine, which causes dependency.
In arguing that the judgment's reservation of plaintiffs' rights creates judicial inefficiency and prevents the application of res judicata to a final judgment, the defendants referred to Small v. Lorillard Tobacco Co., Inc., 07112 (N.Y.7/16/98), 252 A.D.2d 1, 679 N.Y.S.2d 593. That case stated that: "Under New York's transactional approach to res judicata, once a claim is brought to a final conclusion, all other claims arising out of the same transactions are barred, even if based on a different theory or seeking a different remedy." Id. at p. 5, 679 N.Y.S.2d at 601. Defendants assert that by limiting the remedy to medical monitoring, the case inadequately represented the class and impermissibly split the causes of action.
La. R.S. 13:4323 provides in pertinent part:
Sec. 4232. Exceptions to the general rule of res judicata
A. A judgment does not bar another action by the plaintiff:
(1) When exceptional circumstances justify relief from the res judicata effect of the judgment;
(2) When the judgment dismissed the first action without prejudice; or
(3) When the judgment reserved the right of the plaintiff to bring another action. [Emphasis added.]
The 1990 Comment to this statute further states:
... First, [R.S. 13:4232] gives the court the discretion to grant relief from the judgment for exceptional circumstances. This discretion is necessary to allow the court to balance the principle of res judicata with the interests of justice. This discretion must be exercised on a case by case basis and such relief should be granted only in truly exceptional cases, otherwise the purpose of res judicata would be defeated.... Second, it gives the court the authority to reserve in the judgment the right of the plaintiff to bring a subsequent action.... It could also be useful in cases where the plaintiff may be unsure whether he will suffer future *18 injuries from the event which he is presently litigating, e.g., risk of contracting cancer from exposure to asbestos. [Citations omitted.] But it is not intended to apply in the case where the plaintiff has simply failed to assert a right or claim for damages through oversight or lack of proper preparation. [Emphasis added.]
The present case provides exceptional circumstances. In balancing the principle of res judicata with the interests of justice, we conclude that the trial court did not abuse its discretion in granting relief from the judgment by reserving plaintiffs' rights under exceptional circumstances. This case involving exposure to nicotine is analogous to a case involving exposure to asbestos. A reservation of rights can be useful in cases where the plaintiffs are not sure if they will suffer future injuries from the event they are presently litigating, i.e., the risk of contracting serious diseases from exposure to nicotine which is comparable to the example stated in the 1990 Comment, i.e., the risk of contracting serious diseases from exposure to asbestos.
This is an exceptional case because in the interest of justice, a class action is the most effective way to efficiently and economically handle this claim for medical monitoring. Because of the potentially large number of de minimis claims, a class would allow access to the courts for claimants who ordinarily might not be able to litigate. Without a class action, the claimants could not bring an action for medical monitoring, which is designed to assist them in the cessation of smoking, and is designed to monitor the medical condition of class members to ascertain whether they may be suffering from diseases caused by, contributed to, or exacerbated by the habit of cigarette smoking. The medical monitoring is necessary to facilitate early detection and possibly successful treatment of a disease caused by nicotine addiction. In certifying a class action claim for medical monitoring, in the present case the trial court did not abuse its discretion in reserving the rights of the plaintiffs and members of this defined class to assert any claims for damages they may have sustained as a result of smoking cigarettes.

CONCLUSION
In accordance with Bourgeois, a claim for medical monitoring is not a novel theory and is a valid cause of action under Louisiana law. A mass tort arising from a common cause is appropriate for class certification where the common cause in this case can be traced to a single source, nicotine and its addictive quality. Class certification is proper because Louisiana law applies where plaintiffs are limited to Louisiana residents. Certification of the class is not based on novel, untested theories or immature torts because the tort theory of law is based on a products liability action which includes a claim that the product's defect was hidden by the defendants. Plaintiffs assert that the defendants' liability is caused by the singular act of the tobacco industry in selling a defective product after concealing the addictive nature of nicotine.
The claims of the persons specified as class representatives adequately represent a cross-section of the claims made. A class action is the most effective way to efficiently and economically handle this claim for medical monitoring. Although there obviously are individual questions of quantum, this does not preclude a class action where the predominant liability issues are common to the class.
The trial court properly limited the class to smokers, Louisiana residents who are or who were smokers on or before May 24, 1996, of cigarettes manufactured by the defendants, provided the class member alleges that he or she commenced smoking before September 1, 1988 or that one or more defendants actively or intentionally engaged in a course of conduct designed to undermine or eliminate compliance with or attention to warnings on cigarette packaging. The class is limited to smokers who desire to participate in a program designed to assist them in the cessation of smoking and/or to monitor the medical condition of class members to ascertain whether they may be suffering from diseases caused by, contributed to, or exacerbated by the habit of cigarette smoking. The trial court properly reserved the right of plaintiffs and members of this defined class to assert *19 any claims for damages they may have sustained as a result of smoking cigarettes. The class action is limited only to a claim for a medical monitoring program.
Accordingly, we affirm the trial court's judgment certifying and defining the class.
AFFIRMED.
NOTES
[1] Defendants-appellants were listed as: American Brands, Inc. (now known as Fortune Brands, Inc.); BATUS Holdings Inc., BATUS Inc., Brown & Williamson Tobacco Corporation, for itself and for the entity named as The American Tobacco Company (to which Brown & Williamson Tobacco Corporation is the successor by merger); Lorillard, Inc.; Lorillard Tobacco Company; Loews Corporation; Philip Morris Companies Inc.; Philip Morris Incorporated; R.J. Reynolds Tobacco Company; RJR Nabisco Inc.; Tobacco Institute, Inc.; UST Inc.; and United States Tobacco Company.
[2] The question of the dismissal of the cigarette distributors is the subject of a separate appeal under the same title as the instant case, but numbered 98-CA1973 and decided contemporaneously herewith.
[3] Acts 1997, No. 839 Sec. 1 amended La. C.C.P. arts 591-594 and 596, and repealed article 591.1. The act provided that the amended provisions are applicable only to actions filed on or after its effective date, i.e., July 1, 1997.