778 So.2d 679 (2001)
ROYAL STREET GROCERY, INC. et al.
v.
ENTERGY NEW ORLEANS, INC.
Joe Fein Caterer's, Inc., et al.
v.
Entergy New Orleans, Inc.
Nos. 99-CA-3089 and 99-CA-3090.
Court of Appeal of Louisiana, Fourth Circuit.
January 10, 2001.
Writ Denied April 12, 2001.
*681 Wendell H. Gauthier, Scott Labarre, Gauthier, Downing, Labarre, Beiser & Dean, Michael H. Ellis, George B. Recile, Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, LA, Michael Tifft, Raul R. Bencomo, Bencomo & Associates, Robert V.J. Buras, New Orleans, LA, Thomas G. Wilkinson, Gretna, LA, Glen A. Woods, *682 New Orleans, LA, Counsel for Plaintiffs/Appellants.
Kenneth P. Carter, Marcus V. Brown, Entergy Services, Inc., Eugene G. Taggart, John J. Zvonek, Taggart, Morton, Ogden, Staub, Rougelot & O'Brien, L.L.C., Richard C. Stanley, Bryan C. Reuter, Stacy S. Head, Stanley & Flanagan, L.L.C., New Orleans, LA, Counsel for Defendant/Appellee.
Court composed of Judges JONES, BAGNERIS and LOVE.
DENNIS R. BAGNERIS, Sr., Judge.
This is an appeal from a trial court interlocutory decision denying plaintiffs motion for class certification. Defendant, Entergy New Orleans, Inc. ("Entergy"), moved to dismiss this appeal on the ground that the trial court's denial of certification, if it were in fact reviewable at this stage of the proceeding, could be challenged only by a writ order to this Court. This Court denied Entergy's motion and determined that it had jurisdiction to consider this appeal. After careful review of the record in this matter, we find that the trial court was correct in determining that this action is inappropriate for class certification. The trial court's denial of class certification in the instant case is therefore affirmed.

FACTS AND PROCEDURAL HISTORY
This action arose as the result of two power outages that occurred in the New Orleans French Quarter on August 12, 1998. Entergy supplies electricity to its customers within the French Quarter through a continuously energized system of electrical cables, commonly known as the Claiborne Grid. The Claiborne Grid is supplied with electricity by primary feeders that connect to the grid at different locations. The electricity from the primary feeders passes through transformers that reduce the voltage and deliver the electricity to the grid. This type of system is known to be a reliable one, and it is used in many metropolitan areas throughout the country.
On August 12, 1998, a problem arose in the secondary cable located at the corner of St. Peter and Bourbon Streets in the French Quarter. This problem led to a fire in the underground electrical vault at the location. The fire then spread to the primary cable and bus-work, causing extensive damage. The fire department ordered Entergy to de-energize the entire Claiborne Grid in order to allow the department to extinguish the fire. Entergy complied with this order, and the first power outage resulting from the de-energization of the Claiborne Grid began at 2:41 p.m. on August 12, 1998. It took approximately six hours to restore power to the grid due to the extensive damage caused by the fire. Entergy restored the power at 9:02 p.m. that night.
At 9:31 p.m., Entergy was again forced to de-energize the Claiborne Grid. A splice failure had occurred on a primary feeder at the corner of Toulouse and Bourbon Streets. There was no fire involved in this incident; however, the power to the grid had to be shut off, given that there was a primary feeder involved. Once Entergy repaired the splice, it restored power to the Claiborne Grid at 12:32 a.m. on August 13, 1998.
These outages affected approximately 4,200 Entergy customers, both residential and commercial. These customers are served through service agreements and service regulations. Entergy's service agreement provides that Entergy may interrupt electrical service when necessary "in order to comply with an order ... or formal request from a governmental agency." The fire department's order to de-energize the Claiborne Grid was just such an order. Entergy's service regulations further provide that Entergy will not be responsible for interruption of service due to unforeseen difficulties or causes beyond its control. The regulations also provide that the company may interrupt service without notice whenever necessary "on the *683 discovery of conditions dangerous to life or property."
Within hours of the power outages, Royal Street Grocery, Inc. filed suit naming Entergy as a defendant and seeking class certification for a variety of individuals and businesses affected by the outages. Several days later, a second suit was filed naming 21 other businesses and individuals seeking class certification for their losses from the outages. The two actions were consolidated before Judge Carolyn Gill-Jefferson of the Civil District Court of the Parish of Orleans. Judge Gill Jefferson set July 15, 1999 as the hearing date for the certification. Prior to the hearing, the plaintiffs requested a voluntary dismissal of 17 of their 24 proposed class representatives. In their memorandum of law filed prior to the class certification hearing, the plaintiffs stated that their seven remaining representative plaintiffs would represent the following sub-classes of plaintiffs:
A) "Business corporations who lost business, profits, business opportunities and/or inventory as a consequence of the August 12, 1998 power outage;
B) Business partnerships and unincorporated business associations who lost business, profits, business opportunities and/or inventory as a consequence of the August 12, 1998 power outage;
C) Businesses owned and operated by individuals who lost business, profits, business opportunities and/or inventory and sustained mental anguish as a consequence of the August 12, 1998 power outage;
D) Individual business employees who lost wages or other income and sustained mental anguish as a consequence of the August 12, 1998 power outage;
E) Business corporations, partnerships, unincorporated businesses, employees, residents and other entities who sustained property damage as a consequence of the subject power outage of August 12, 1998; and
F) All residents of the French Quarter (and other adjoining areas) who lost power during the power outage of August 12, 1998, and as a result, experienced inconvenience and mental anguish."
At the hearing, the plaintiffs testified that the classes should include both customers and non-customers of Entergy, residents and non-residents of the French Quarter, and businesses that lost electrical power during the outage, as well as those businesses that did not lose power at that time. At the hearing, Judge Gill Jefferson concluded that the plaintiffs had failed to carry their burden of defining the class. In addition, Judge Gill Jefferson found that the plaintiffs had failed to carry their burden on numerosity, typicality and representativeness, commonality, predominance and superiority. It is from this decision that the plaintiffs now appeal. After a careful review of the record, we find that the trial court judge committed no manifest error; therefore, we affirm the trial court's decision to deny class certification.

LAW AND DISCUSSION
The sole issue for review is whether the trial court committed manifest error in determining that the plaintiffs did not meet their burden of proving that they satisfied the prerequisites for certification of a class. The plaintiffs argue that the trial court committed manifest error in refusing to certify this single-cause mass tort accident as a class action. We disagree.
The purpose and intent of the class action is to "adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action, but to all others who are similarly situation." See Ford v. Murphy Oil U.S.A., Inc., 96-2913 (La. 9/9/97), 703 So.2d 542, 544. Louisiana courts are generally given vast discretion to determine whether or not to certify a class. See *684 Billieson v. City of New Orleans, 98-1232 (La.App. 4 Cir. 3/3/99), 729 So.2d 146, 152, writ denied, 99-0946 La. 10/29/99, 749 So.2d 644, writ denied, 99-0960. (La. 10/29/99), 749 So.2d 645. The trial court's decision therefore must not be reversed absent manifest error. See Adams v. CSX Railroads, 615 So.2d 476 (La.App. 4 Cir. 1993).
Recently, there has been a tendency to require class certification when the statutory requirements have been met. See Billieson at 152. This places the burden on the party seeking the class certification to demonstrate that all of the necessary elements for the certification exist. Specifically, the plaintiff must show that the class is definable and that it satisfies the requirements of numerosity, commonality, typicality and representativeness of the sub-classes in the suit. The plaintiff must also demonstrate that the class action procedure is superior to other forms of adjudication.
The class action procedure is governed by Louisiana Code of Civil Procedure Articles 591-597. Article 591(A) provides the general rule for certification of a class. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class;
(4) The representative parties will fairly and adequately protect the interests of the class; and
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
If all of these criteria are not met, then the class should not be certified.

Numerosity
In order to be certified as a class, the plaintiffs must first demonstrate that the interested parties are so numerous that separate suits would unduly burden the courts, and that, given the numerosity of the plaintiffs, the class action procedure would be more judicially economical than other litigation procedures. See Billieson at 154. A certain number of plaintiffs is not necessary in order to fulfill this requirement; nor is the precise identification of all class members required. See Id. It is not essential that every member of a class can be identified prior to certification. In fact, difficulty in identifying the claimants is one of the factors that makes joinder impracticable and a class action appropriate. See Andry v. Murphy Oil U.S.A., Inc., 97-0793 (La. App. 4 Cir. 4/1/98), 710 So.2d 1126, writ denied, 98-1158 (La. 6/19/98), 720 So.2d 1213, writ denied, 98-1178 (La.6/19/98), 720 So.2d 1214. The plaintiffs in the instant case claim that 4,200 individuals were unduly burdened by the outages. The record in the instant case shows that, of the 4,200 individuals affected by the 1998 outages, the plaintiffs have only identified 62 aggrieved parties to be included in the sub-classes within the suit. Given the fact that the numerosity requirement does not set a required minimum number of plaintiffs, the inquiry then rests upon whether or not joinder is practical in this case. If joinder is a practical alternative, then the class should not be certified. The record shows that there are a large number of class members, many of whom are not yet known. Since there would be difficulty in identifying all of the claimants, joinder would be an impractical alternative. See Billieson at 154. The plaintiffs have therefore satisfied the numerosity requirement for class certification.

*685 Commonality

The requirement of commonality is met when the common questions of fact and law predominate over issues or defenses affecting only individual class members. See Cotton v. Gaylord Container, 96-1958 (La.App. 1 Cir. 3/27/97), 691 So.2d 760, 771. The Supreme Court of Louisiana has concluded that when the plaintiffs' individual liability issues predominate over the issue of the defendant's duty, a class action certification is not appropriate. See Banks v. New York Life Insurance Co., 98-0551 (La.7/2/99), 737 So.2d 1275, 1281, cert. denied, Major Banks v. New York Life Insurance Co., 528 U.S. 1158, 120 S.Ct. 1168, 145 L.Ed.2d 1078 (2000). When there are a myriad of individual complaints that ultimately will require plaintiff-by-plaintiff adjudication of liability issues, this will militate against a finding of predominance of common character and the superiority of the class action procedure. See Id. If the plaintiffs' claims are such that individual adjudication will be required, the basic purpose of the class action judicial economy will be thwarted. Therefore, it is important for the court to insure that the common issues in the case predominate before it certifies the class.
In the instant case, there are several theories of liability proposed by the various sub-classes of plaintiffs. Several of the businesses have service contracts with Entergy and would sue the defendant on the theory of breach of contract. Certain of the classes do not have a direct contractual relationship with the defendant and have to make a claim against the defendant derivatively. The issue of whether these parties even have standing to sue Entergy on a breach of contract claim will have to be litigated individually. There are also certain individuals who will have to sue Entergy on a non-contractual, tort basis. Whether Entergy has any liability to these customers and third parties will also have to be litigated individually. In addition, the sub-class of employees who are suing for lost wages and mental anguish will have to sue Entergy on some non-contractual basis. Whether or not they will have standing to bring the action will also have to be individually litigated. This will have to be decided at the outset of the litigation and will cause a great expense of judicial time and resources.
The requirement of a "common character" restricts the class action to those cases in which it would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situation. See McCastle v. Rollins Environmental Services of La., 456 So.2d 612, 616 (La.1984). When a common character of rights exists, a class action will be superior to other adjudicatory methods in effectuating substantive law, promoting judicial efficiency and individual fairness. See Id.
In the instant case, there will have to be much litigation regarding whether or not many of the sub-classes of plaintiffs even have standing to sue. Additionally, each of the individualized claims, though arising from a common occurrence, will bring up individualized defenses. Given the situation in the case at bar, the overall effectiveness of the class action will be lessened, and is therefore not appropriate. In short, the plaintiffs have failed to satisfy the commonality requirement necessary for class certification.

Typicality and Representativeness
Typicality is another requirement of La. C.C.P. Art. 591(A). Article 591(A) requires that the claims of the class representatives are typical of the claims and defenses of the class. The record shows no evidence that the plaintiffs endeavored to determine whether the representatives of the sub-classes were typical of the absent claimants. Given the divergent theories of liability and type and severity of damage to the plaintiffs, it becomes even more imperative to show typicality. Since a decision in a class action suit will have a res judicata effect on certain *686 parties who are not named in the suit, insuring that the absent parties are properly represented is crucial. In the instant case, the plaintiffs have failed to satisfy the typicality and representativeness requirement necessary for class certification.

Definability
Definability of the class by objective criteria is essential given the res judicata effect of the class action procedure. A precise geographic definition of the class is not absolutely necessary. In light of the purpose of the class action procedure, it is objectively reasonable for the geographic area to be defined broadly so as to encompass all potential class members. See Andry, 710 So.2d at 1130. The defendant argues that the plaintiffs do not define with specificity which individuals or businesses would be included or excluded from the proposed sub-classes. Contrary to the defendant's argument, the proposed sub-classes are sufficiently defined in order to give potential class members enough information to decide whether they are included within the class and to enable class members to decide whether to opt out of the class. Therefore, the plaintiffs have satisfied the definability requirement necessary for class certification.

Superiority
Louisiana Code of Civil Procedure Article 591(B) provides that in order for a class action to be maintained, the superiority of the class action procedure over other forms of adjudication must be shown. In considering the superiority of the class action procedure, one must look carefully at how the procedure would effectuate substantive law and determine whether the procedures is superior to others for the fair and efficient adjudication of the controversy. See McCastle, 456 So.2d at 618. The class action may work in the instant case to open the court up to claims that would not ordinarily be litigated. Certain of the claims are obviously smaller than others, and if a joinder was forced (rather than a class action), there is a good likelihood that certain claims would not be litigated due to the high costs of litigation and the relatively small nature of the claims. In addition, if the class were to be certified, the interests of those absent from the litigation, who may be affected by the litigation regardless of its class nature, would be given representation in the process. See Id. This benefit of the class action procedure must be balanced against the interests of judicial efficiency however, since a fundamental objective of the class action device is the achievement of economies of time, effort and expense. See Id. at 619. There is a question as to whether the individual claims would predominate over the questions of law and fact common to the members of the class in the case. Given the distinct nature of the causes of action for each of the sub-classes and the fact that the types and extent of the damage caused by this single incident are wildly divergent, this Court finds no cause to believe that the trial court erred in finding that the class action procedure is not superior to other forms of adjudication. Therefore, the plaintiffs failed to satisfy the superiority requirement necessary for class certification.
The plaintiffs have clearly established the numerosity and definability requirements for certification of the class action. However, the satisfaction of the commonality and typicality requirements is less clear. It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong", and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. See Richardson v. American Cyanamid Co., 99-675 (La.App. 5 Cir. 2/29/00), 757 So.2d 135, 143, writ denied, XXXX-XXXX (La.5/12/00), 761 So.2d 1291. Given the fact that deference should be *687 given to the trial court absent manifest error, this Court sees no reason to reverse the decision of the trial court. The trial court's denial of class certification in the instant case is therefore affirmed.

CONCLUSION
For the foregoing reasons, the trial court's ruling is hereby affirmed.