737 So.2d 761 (1998)
Dwayne and Lynn LAFLEUR, Individually, and as Representatives of a Class of Those Similarly Situated, Plaintiffs-Appellants
v.
ENTERGY, INC., et al., Defendants-Appellees.
No. 98-344.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1998.
*762 William B. Baggett, Clayton Arthur Larsh Davis, Ernest C. Hunt, Jr., Lake Charles, Bernard Hugh McLaughlin, Jr., Hunter William Lundy, Robert C. McCall, James D. Cain, Jr., Jamie B. Bice, and Erin M. Alley, Lake Charles, for Dwayne and Lynn Lafleur, Indiv.
Kenneth Paul Carter, New Orleans, John B. Scofield, Lake Charles, and Eugene G. Taggart, New Orleans, for Energy, Inc. and Eduardo Melendreras.
Before DOUCET, C.J., and YELVERTON and AMY, JJ.
AMY, Judge.
This proposed class action is consolidated with three similar actions arising from a winter storm affecting southwest Louisiana in January 1997. The plaintiffs, residential and business property owners, allege damages as a result of power outages during the storm. Named as defendants in the class action are Entergy Corporation and its subsidiary, Entergy/Gulf States, Inc. The lower court denied class certification finding individual issues outweighed those common to the purported class. The plaintiffs appeal asserting that common issues of law and fact predominate. For the reasons which follow, we affirm.

Factual and Procedural Background
The instant matter stems from a winter storm affecting the southwest part of Louisiana for several days in January 1997. During this time period, the area encountered problems due to freezing precipitation. Estimates of accumulated precipitation during the winter storm ranged from .78 inches to as much as three inches. Following the storm, four petitions were filed by plaintiffs alleging damages sustained due to storm-related power outages.[1] Entergy Corporation and its *763 subsidiaries were named as defendants in the four actions (hereinafter referred to collectively as Entergy). These four actions, two of which were comprised of business/commercial customers and two of which were comprised of residential customers, were subsequently consolidated for the lower court's consideration.
In the petitions instituting this matter, the plaintiffs allege that Entergy was inadequately prepared for the winter storm and, further, that the attendant power outages were caused by Entergy's inadequate vegetation maintenance along the power lines, i.e., inadequate tree-trimming. In the plaintiffs' pre-trial memorandum in support of their Motion for Class Certification, the plaintiffs argued that Entergy should have anticipated the storm and been better prepared for outages and, further, stated that "Entergy [was] negligent in failing to properly maintain its transmission and distribution systems, as well as having an inadequate vegetation management program in place." The plaintiffs alleged that "Entergy's failure in these areas contributed to the massive power outages suffered by residential and business/commercial customers, as well as prolonged the restoration of electrical service to these customers."
At the time of the plaintiffs' memorandum in support of their Motion for Class Certification, the plaintiffs maintained that two classes were required as follows:
All residents and domiciliaries who were customers receiving electrical service from defendant, Entergy, Inc., on or about Sunday, January 12, 1997, who are within Network 10[2] of Entergy's southwest franchise, whose power was unexpectedly and abruptly interrupted.
All businesses and/or commercial entities who were customers receiving electrical service from defendant, Entergy, Inc., on or about Sunday, January 12, 1997, who are within Network 10 of Entergy's southwest franchise, whose power was unexpectedly and abruptly interrupted.
The plaintiffs asserted that the matter was appropriate for class certification as the plaintiffs were so numerous as to make joinder inappropriate, the individual claims associated with the action were insubstantial, and that the plaintiffs shared common causation issues as the outages were due primarily to power outages caused by Entergy's inadequate vegetation maintenance.
Following a hearing lasting several days, the trial court denied certification, vacated the order of consolidation, and noted that, pursuant to La.Code Civ.P. art. 593.1, amendment of the pleadings would be allowed to permit maintenance as ordinary proceedings. In written reasons for ruling, the trial court noted that, although commonality existed as to some aspects of the plaintiffs' case, class certification was inappropriate as the plaintiffs failed to prove that any breach of duty by the defendant was common as to the members of the putative class. The trial court pointed to testimony indicating that there were a variety of causes for power outages during the storm. Following the denial of class certification, the plaintiffs' filed a motion for reconsideration or new trial. Alternatively, the plaintiffs asked that the trial court certify a more limited class. Namely, the plaintiffs asked that the class be certified "to all those residents and commercial businesses that were out of power for more than twelve hours and whose power outage was a result of a feeder being rendered useless due to a fallen tree and/or tree limb within the Entergy/GSU right of way and/or jurisdiction." This motion was subsequently denied by the trial court.
*764 The plaintiffs appeal asserting the following assignments of error:
1. The district court erred in denying plaintiffs/appellants' motion for class certification.
2. The district court erred in denying plaintiffs/appellants' motion for reconsideration and/or new trial for a more limited class.

Discussion

Denial of Class Certification
In their first assignment of error, the plaintiffs maintain that they offered sufficient proof of each of the factors required for a class action and, therefore, the trial court erred in denying class certification.
As explained by the Louisiana Supreme Court in Ford v. Murphy Oil U.S.A., Inc., 96-2913, p. 4 (La.9/9/97); 703 So.2d 542, 544, class actions are a nontraditional litigation procedure which allow a "representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common or general interest to persons so numerous as to make it impracticable to bring them all before the court."
At the time this matter was filed, La.Code Civ.P. art. 591[3] provided as follows:

*765 A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
(1) Common to all members of the class; or
(2) Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right.
La.Code Civ.P. art. 592 instructed that:
One or more members of a class, who will fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members.
Thus, it is apparent that, in order to obtain class certification, Articles 591 and 592 require the presence of the following elements: "(1) a class so numerous that joinder is impracticable; (2) the joinder of parties who are members of the class and able to prove adequate representation for absent members; and (3) a "common" character among the rights of the representatives of the class and the absent class members." Andry v. Murphy Oil, U.S.A., Inc., 97-0793, p. 3 (La.App. 4 Cir. 4/1/98); 710 So.2d 1126, 1129, writ not considered, 98-1204 (La.6/19/98); 719 So.2d 473, writs denied, 98-1158 (La.6/19/98); 720 So.2d 1213; 98-1178 (La.6/19/98); 720 So.2d 1214.
In the present matter, the trial court provided written reasons for ruling and, after noting that the purported class met the numerosity requirement, focused on the commonality requirement. Finding that the plaintiffs had not met their burden as to this element, the lower court explained, in part, as follows:
In the instant case, absolute commonality exists in some areas. There was an ice storm. The ice storm affected all the members of the putative class. There were power outages. The power outages affected all members of the putative class. Entergy/GSU had a duty to provide electrical service to all the members of the putative class.
These common issues are not sufficient in and of themselves to justify a finding of commonality because, henceforth, the common issues are not clear. As to each member of the class, the Plaintiffs must prove a breach of duty by Entergy/GSU. Each member must show that Entergy/GSU's breach of duty caused the individual damages and the amount of individual damages.
The Plaintiffs have failed to carry their initial burden of proving that a breach of duty by Entergy/GSU was pervasive enough within the putative class to be considered common. Rank speculation would be required to conclude that the entire putative class suffered all of its damages due to the negligence of Entergy/GSU in the power outages or restoration. Furthermore, Entergy/GSU has put forward plausible, substantiated, alternate causes of the power outages for which Entergy/GSU was not at fault.
Without doubt, fallen trees and tree limbs or lines caused a great number of outages. However, each class member in this category of outage cause would have to prove that the "offending" tree was under Entergy/GSU's "jurisdiction." Additionally, issues such as the contributory *766 negligence of the class member, other class members, or third parties in interfering with Entergy/GSU's tree trimming efforts would have to be determined.
The evidence adduced through the testimony of Dudley Clark, Todd Kyle, and Dr. Frederick Brooks showed numerous other causes of the outages caused by the ice storm which could not have been prevented by Entergy and were not due to its negligence. Ice loading caused downed poles and wires, broken cross arms, anchors, and guy wires. The ice and freezing temperatures caused frozen switches and fuses. In some instances, the customer's own equipment was damaged by ice causing outages and preventing and/or delaying restoration of power. Restoration was dependent on multiple varying factors.
Following our examination of the record, we do not find the lower court's assessment of the evidence erroneous. Rather, the record provides testimony supporting the lower court's conclusion that the power outages experienced by the purported class were attributable to a variety of factors.
On the issue of commonality, the plaintiffs relied, in part, on the testimony of Dr. Alton Patton, accepted by the court as an expert in electrical engineering with specific recognition of his expertise in the area of public utility reliability. Dr. Patton estimated, based upon his review of the relevant documents provided by Entergy, that 45,802 customers in the Network 10 area were affected by the power outage during the winter storm. He further opined that "the lack of an effective Vegetation Management Program together with over many yearsbeginning before the Entergy acquisition actuallythe lack of an effective preventive maintenance program all rendered the system vulnerable to the stress of a storm; be it an ice storm or a thunder storm, or whatever else." He further testified that, although he was not able to complete a survey of the various causations of the power outages in the Lake Charles area, he was able to analogize between Louisiana and a report issued by Entergy for the Texas area of operations indicating that during the same storm, ninety percent of the outages were due to falling tree limbs.
This evidence clearly demonstrates the difficulty in the plaintiffs' case with regard to the commonality requirement. Dr. Patton's testimony demonstrates that, although perhaps as much as ninety percent of the outages were due to falling tree limbs, a sum based merely on analogy to outages in Texas, other causative factors certainly exist. In this particular, case, each member of the purported class would be required to prove that Entergy's breach of duty caused his or her power outage. While such a showing is always required of a plaintiff in order to recover, the instant matter involves a variety of causal links that would have to be proven by each individual plaintiff. It is the existence of these numerous links, links individual to each plaintiff, that render this case inappropriate for certification.
For instance, after each plaintiff proved that a falling tree or tree limb caused their damage, it would have to be proven that the tree limb causing that particular plaintiffs outage was within the control of Entergy. In some instances, many plaintiffs would have surely been affected by the same falling limbs causing a common outage along a particular line. However, in other instances, the plaintiffs would have to individually demonstrate that falling limbs caused their individual damage.
Furthermore, even when based solely on the plaintiffs' own evidence, it is evident not all outages were due to falling trees and tree limbs within Entergy's control. However, the defendant presented evidence indicating that, while many of the outages were attributable to falling tree limbs, icing of the lines and other weather-related factors also caused outages. This evidence, too, indicates that each individual plaintiff was not similarly *767 situated in that some of the plaintiffs' power outages were due to, or restoration was hampered by, damage on their own property. Clearly, these types of considerations are individual and are not common class-wide. Therefore, we find no error in the trial court's factual determination that, in the least, the plaintiffs failed to prove that common issues outweighed those particular to the individual plaintiffs.
Although the trial court's written reasons clearly reflect a finding that a lack of commonality was the central deficiency in the plaintiffs' case, the ruling also reflects a finding that the plaintiffs' showing was problematic with regard to the requirement of adequate representation by the named representatives. Given our finding that the trial court did not err in the factual determinations relating to commonality, we defer from an extensive analysis of this required element, although our review of the testimony offered in this regard indicates no error in the trial court's determination.

Motion for Reconsideration and/or New Trial
In their second assignment of error, the plaintiffs maintain that the trial court erred in denying their motion to certify a more limited class.[4] The plaintiffs contend that this denial was in contradiction to the trial court's written reasons wherein the court stated as follows:
A guarantee of fairness will not be hindered by a refusal to certify this class. As in Ford v. Murphy Oil, [703 So.2d 542] (La.1997), "(denial of certification) will not keep these Plaintiffs out of Court as individual actions, consolidated actions, or perhaps a more limited class action." Certainly, with adequate proof, these actions can be maintained as individual, ordinary actions, or consolidated actions.
In their brief to this court, the plaintiffs argue "that the trial court abused its discretion in denying plaintiffs motion for the more limited alternative class in contradiction to its written reasons for judgment. Therefore, plaintiffs would move in the alternative that this more limited class be certified and remanded to the trial court."
At the time of the filing of this matter, La.Code Civ.P. art. 593.1[5] provided as follows:
A. After commencement of an action by or on behalf of parties alleged to be members of a class, the court, on its own motion, or on the motion of any party or on trial of any exception directed to such issue, shall determine whether the action may be properly maintained as a class action as a prerequisite to any further proceedings therein. If the court finds that the action should be maintained as a class action, it shall certify the action accordingly; otherwise the action shall be dismissed. The court may permit amendment of the pleadings in the action to permit maintenance thereof as an ordinary proceeding on behalf of parties expressly named therein.
B. In the process of class certification or at any time thereafter before decision on the merits, the court may alter, amend or recall its certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action.
Thus, it would appear from reference to Article 593.1(A) that, after denying class *768 certification, the trial court is required to dismiss the action or allow its continuation as an ordinary proceeding. Reference to Article 593.1(B), however, indicates that more flexibility is available to the trial court when the class has been certified. In the present case, of course, certification was denied. In any event, we find no error in the trial court's denial of the plaintiffs' motion for reconsideration/new trial.
Although the plaintiffs argue that they requested a more limited class pursuant to the trial court's written reasons, reference to the trial court's written reasons in their entirety indicates that the trial court did not suggest that such a classification was possible. Rather, the trial court did not eliminate the possibility of a more narrowly defined class at a future time. In this regard, the trial court wrote, as follows:
Certainly, with adequate proof, these actions can be maintained as individual, ordinary actions, or consolidated actions. Further discovery could even lead to a more definitive class in which causation and liability are not of such an overwhelmingly variable nature. Therefore, pursuant to C.C.P. Art. 593.1, amendment of the pleadings will be allowed to permit maintenance of the actions as described above. The Defendant's Exception to the Use of the Class Action is maintained. The Plaintiff's Motion for Class Certification is denied.
Therefore, the trial court, at the time of the written reasons, concluded that the state of the evidence presented did not allow for class certification. Given the nature of the testimony indicating the individual and varying nature of the plaintiffs' claims, we do not find such a determination to be in error. Therefore, this assignment is without merit.

Motion to Strike
Finally, we note that the defendant filed with this court a Motion to Strike asserting that an attachment to the plaintiffs' brief should be disregarded. This document, which was issued by the Public Utility Commission of Texas, was not introduced into evidence before the lower court and, therefore, should not now be considered. In their motion, the defendant asserts that the plaintiffs "are improperly attempting to introduce in this Court the factual findings of the Public Utility Commission of Texas in Entergy Gulf States, Inc.'s transition/rate case in the State of Texas." In opposition, the plaintiffs maintain that the document is attached as a "courtesy copy" as the document, the Final Order of the Texas Public Utilities Commission, has not yet been reported in the relevant reporters. The plaintiffs argue that the document is "offered as persuasive legal authority only."
La.Code Civ.P. art. 2164 provides, in part, that an "appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." (Emphasis added.) Furthermore, as explained by the first circuit in J. Ray McDermott, Inc. v. Morrison, 96-2337, p. 8 (La.App. 1 Cir. 11/7/97); 705 So.2d 195, 201, writ denied, 97-3055 (La.2/13/98); 709 So.2d 753, "this court has no authority to consider on appeal facts referred to in appellate briefs, or in exhibits attached thereto, if those facts are not in the record on appeal."
The plaintiffs argue that their attachment of the document is merely included as persuasive authority. This type of inclusion is anticipated by Rule 2-12.4 which instructs that with regard to the appellant's brief, "[w]hen a decision from another state is cited, a copy thereof should be attached to the brief." Our review of the appellant's brief, however, indicates that, as argued, the document at issue is not cited as authority, but, rather, is advanced for the factual findings contained therein. This type of inclusion, outside of the record, is improper for this court's review. In any event, the type of information contained within the "Final Order" does not resolve the plaintiffs' difficulty in proving commonality, rather, this information, if relevant, would be useful for issues of liability. *769 For these reasons, the document has not been considered.

DECREE
For the foregoing reasons, the decision of the lower court is affirmed.[6] All costs of these proceedings are assessed against the plaintiffs, Dwayne and Lynn LaFleur, et al.
AFFIRMED.
NOTES
[1] The present case was filed as Dwayne and Lynn LaFleur v. Entergy, Inc., et al.. Also addressed by this opinion are the three remaining cases consolidated for consideration. See JM & F and Rickey Whaley v. Entergy, Inc., et al., 98-345 (La.App. 3 Cir. 12/09/98); 737 So.2d 770; Agnes Bartie and August Bartie, et al. v. Entergy, Corp., et al., 98-346 (La.App. 3 Cir. 12/09/98); 737 So.2d 769; Andrew Casanave, et al. v. Entergy, Inc., et al., 98-347 (La.App. 3 Cir. 12/09/98); 737 So.2d 769.
[2] The record reveals that Network 10 is the Lake Charles network and extends eastward from the Sabine River to the approximate area of Crowley, Louisiana.
[3] La.Code Civ.P. art 591 was recently amended by Acts 1997, No. 839 § 1 and, effective July 1, 1997, provides as follows:

A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.
C. Certification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class. However, following certification, the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of a class.
Although these revisions were in effect at the time of the hearing in the instant matter, Acts 1997, No. 839 § 3 provides that "[t]he provisions of this Act shall be applicable only to actions filed on and after its effective date." As previously discussed, this matter was filed in January 1997 and, accordingly, the prior law in existence at the time of filing is applicable.
[4] As previously explained, the plaintiffs filed a motion for reconsideration/new trial requesting that "a more limited class be certified to all those residents and commercial businesses that were out of power for more than twelve hours and whose power outage was a result of a feeder being rendered useless due to a fallen tree and/or tree limb within the Entergy/GSU right of way and/or jurisdiction."
[5] Article 593.1 of the Louisiana Code of Civil Procedure has been repealed by Acts 1997, No. 839 § 2. However, pursuant to Acts 1997, No. 839 § 3, the provisions of the Act are inapplicable to actions filed after its July 1, 1997 effective date. As previously stated, the instant matter was filed in January 1997.
[6] As this appeal focused only on the class certification issue, remand to the lower court is not required as to the progression of these actions as ordinary proceedings.