832 So.2d 274 (2002)
Craig WEST, Troy West, and W.B. Farms Inc., et al.
v.
G & H SEED COMPANY, et al.
No. 01-1453.
Court of Appeal of Louisiana, Third Circuit.
August 28, 2002.
*276 Arthur W. Landry, PlauchÉ, Maselli, Landry and Parkerson, L.L.P., New Orleans, LA, for Defendants/Appellants, G & *277 H Seed Company, Inc. and Crowley Grain Drier, Inc.
Dawn M. Barrios, Bruce S. Kingsdorf, Barrios, Kingsdorf & Casteix, New Orleans, LA, Patrick C. Morrow, John Michael Morrow, Morrow, Morrow, Ryan & Bassett, Opelousas, LA, Gano Lemoine, Vance R. Andrus, Andrus, Boudreaux, Lemoine & Tonore, Lafayette, LA, Melanie M. Piech, Lori E. Andrus, Elizabeth J. Cabraser, Lieff, Cabraser, Heinmann & Bernstein, San Francisco, CA, William Neblett, Richard Arsenault, Neblett, Beard & Arsenault, Alexandria, LA, Kirk A. Guidry, Paul H. Due, Dué, Caballero, Price, Guidry, Piedrahita & Andrews, Baton Rouge, LA, for Plaintiffs/Appellees, Craig West, Troy West and W.B. Farms, Inc.
Gary A. Bezet, Robert E. Dille, Gregory M. Anding, Craig M. Freeman, Kean, Miller, Hawthorne, D'Armond, McCowTan & Jarman, Baton Rouge, LA, For Defendant/Appellant, Aventis Crop Science, USA LP.
Carl Duhon, Ike Huval, Duhon Law-Firm, Lafayette, LA, Elwood Stevens, Jr., Kleinpeter, Schwartzberg & Stevens, L.L.C., Morgan City, LA, for Plaintiffs/Appellees, Patrick E. Phillips, Jr. d/b/a Phillips Seafood & Atchafalaya Processors, Inc.
Donald R. Smith, Smith & Davis, Baton Rouge, LA, for Defendant/Appellant, Terral Seed, Inc.
Peter F. Caviness, Dauzat, Falgoust Caviness & Bienvenu, L.L.P., Opelousas, LA, for Defendants/Appellants, Mamou Rice Driver & Warehouse & Nolan J. Guillot.
Homer Ed Barousse, Barousse & Craton, Crowley, LA, for Defendant/Appellant, G & H Seed Company, Inc.
J. Wendel Fusilier, Law Office of J. Wendel Fusilier, Ville Platte, LA, for Defendant/ Appellant, Mamou Rice Dryer & Warehouse Supply, Inc.
Kenneth O. Privat, Privat & Regan, Crowley, LA, for Defendant/Appellant, Crowley Grain Drier, Inc.
Matthew Lundy, Hunter Lundy, Lundy & Davis, Lake Charles, LA, for Plaintiffs/Appellees, Jason Robin, Anthony Godeau, et al.
Michael Wheatley Merrit, Delhi, LA, for Defendant, Delhi Seed Company, Inc.
Court composed of HENRY L. YELVERTON, ULYSSES GENE THIBODEAUX, and BILLIE COLOMBARO WOODARD, Judges.
THIBODEAUX, Judge.
Plaintiffs sought to certify a class of crawfish farmers against Aventis, an insecticide manufacturer, and certain distributors of insecticide-treated rice seed. Under various legal theories, plaintiffs allege damage to their pond-grown crawfish crops as the result of the purchase and use of the insecticide. The trial court certified three plaintiff subclasses and denied plaintiffs' motion to certify a class of defendants. The defendants have appealed the certification of plaintiff subclasses. For reasons set forth below, we affirm in part and reverse in part.

I.

ISSUES
We shall consider the issues for review in conjunction with one another, namely, whether the trial court erred in:
(1) abrogating Aventis' due process right to discovery of the nature of the claims against it and of absent class members;
(2) admitting the hearsay testimony of allegedly aggrieved parties in support of the numerosity requirement;
*278 (3) granting plaintiffs' motion for class certification by certifying three subclasses of plaintiffs to pursue a collective claim against Aventis, manufacturer, and various rice seed distributors;
(4) failing to choose class representatives;
(5) defining three subclasses rather than one class; and,
(6) failing to establish geographic boundaries of the class consistent with the evidence presented.

II.

FACTS AND PROCEDURAL HISTORY
This suit was instituted by Louisiana crawfish farmers who allege damage to their pond-grown crawfish crops as the result of the purchase and use of an insecticide. At this procedural stage of the suit, we are concerned only with the propriety of the certification, not with the merits of the plaintiffs' allegations.
Aventis Crop Science, USA LP (hereinafter "Aventis") manufactures Fipronil, an insecticide bearing the trade name ICON 6.2 FS. In July 1998, the United States Environmental Protection Agency authorized Aventis to market the insecticide, and it was extensively introduced into the Louisiana market in 1999. The chemical was sold in liquid form to seed distributors/applicators who, pursuant to contracts with Aventis, applied ICON to rice seed prior to planting. The purpose of the chemical treatment was to combat the rice water weevil.
In Louisiana, rice and crawfish are often conjunctively farmed, either in the same pond or in close proximity to one another. The rotation patterns for the two crops vary, but water that has been used in a rice field ("tailwater") is sometimes employed to irrigate crawfish ponds. After planting rice, tailwater might also be discharged into surrounding ditches and canals, and a downstream crawfish farmer may retrieve this tailwater and introduce it into his pond. Crawfish are not always grown in rice fields.
The state-wide crawfish harvest declined by millions of pounds from 1999 to 2000. Plaintiffs allege that the use of ICON-treated rice seed in certain ponds has had a devastating effect on co-cultured crawfish harvests in 1999 and 2000. Some farmers have experienced total loss of their crawfish crop; others have experienced a commercially damaging decline.
Plaintiffs allege that once reports began to mount regarding ICON's ill effects on the crawfish industry, Aventis conducted field tests and concluded that any increase in crawfish mortality resulted either from a misapplication of ICON, was unrelated to ICON, or was attributable to the severe 1998 drought. Plaintiffs also allege that the Department of Agriculture only tested for the presence of Fipronil, the active ingredient in ICON. Fipronil was found in extremely low levels and, therefore, could not be conclusively linked to crawfish mortality. Plaintiffs argue, however, that these low levels result from the ingredient's tendency to rapidly break down into derivatives which bind to soil particles and do not dissolve in water.
Aventis admits that ICON's label states that the product is toxic to aquatic invertebrates, crawfish included. Aventis argues, however, that an ICON-treated seed is toxic to crawfish only if the seed is eaten. This should not happen, since by the time crawfish are introduced into a rice field approximately six to eight weeks after planting, the rice seed has sprouted and only traces of ICON residue remain. The defendants attribute the decline in crawfish production to the drought, which transpired at roughly the same time that *279 ICON was introduced into the Louisiana market.
Plaintiffs sued Aventis, manufacturer of ICON, and eventually named as defendants several seed distributors/applicators who sold ICON-treated seed to their respective customers. Suit was brought under various legal theories, including product liability, redhibition, negligence, negligent misrepresentation, fraudulent concealment, intentional misrepresentation, fraud, and breach of contract. Plaintiffs proposed three plaintiff subclasses and also sought certification of a defendant class.
Following trial on plaintiffs' motion to certify a class, the judge issued written reasons for judgment on July 30, 2001. The judgment was signed on August 8, 2001 certifying three plaintiff subclasses as follows:
Subclass 1: All persons or legal entities from January of 1999 who purchased ICON-treated seed for the planting of rice or for crawfish operations in the State of Louisiana and who allege financial loss and damages as a result of said crop's exposure to ICON; and,
Subclass 2: All persons or legal entities from January of 1999 who farm crawfish in the State of Louisiana and who allege financial loss and damages to their respective crawfish crop as a result of said crop's exposure to ICON; and,
Subclass 3: All persons or legal entities from January of 1999 who participated in a sharecropping arrangement for the farming of crawfish in the State of Louisiana and who allege financial loss and damages as a result of its crawfish farmers' crop exposure to ICON.
The judgment denied plaintiffs' motion to certify a class of defendants.
In addition to filing their respective motions for appeal of the class certification, some named defendants also sought supervisory writs, which writ applications were granted and converted into an appeal. Those distributor defendants who presently appeal are Nolan J. Guillot, Inc. (hereinafter "Nolan Guillot"), Mamou Rice Drier and Warehouse, Inc. (hereinafter "Mamou Rice"), G & H Seed Company, Inc. (hereinafter "G & H Seed"), Crowley Grain Drier, Inc. (hereinafter "Crowley Grain"), Terral Seed, Inc., and ICON manufacturer, Aventis.
We note here that at oral argument, plaintiffs' counsel stipulated that they could not prove a claim for certification against Terral Seed, Inc., and that this defendant should be dismissed from the suit. We acknowledge this stipulation, reverse against Terral Seed, Inc., and dismiss it from this suit.

III.

LAW AND DISCUSSION
The Discovery Ruling
Before discussing the class certification in general, we address the trial court's discovery ruling. During the course of litigation, the trial court granted in part and denied in part Aventis' Motion to Compel. The court ordered plaintiffs to submit to Aventis a list of witnesses whom they intended to use at the class certification hearing, and Aventis was given the right to depose all listed witnesses prior to the hearing. The defendant sought supervisory review of the judgment on the motion from both this court and from the Louisiana Supreme Court. A panel of this court denied writs and stated that "[t]he trial court did not abuse its discretion in this discovery ruling." The supreme court simply denied writs. Aventis now prays that we remand the matter to afford full discovery of the extent and scope of the purported class.
*280 Aventis claims that both courts declined to review the decision because, it is argued, the courts believed the defendant had an adequate remedy on appeal. Conversely, plaintiffs submit that we should not review this discovery challenge since we have previously held that the trial court did not abuse its discretion in its discovery ruling. Because review of this matter would require us to revisit our prior decision, plaintiffs urge the application of the law of the case doctrine. We agree.
The law of the case doctrine operates to avoid re-litigation of the same issue, promotes consistency of results in the same litigation, and fosters fairness by affording parties one single opportunity to argue the issue and have it decided. Bowie v. Young, 01-0715 (La.App. 3 Cir. 3/20/02); 813 So.2d 562, writ denied, 02-1079 (La.6/21/02); 819 So.2d 335. The doctrine operates "to prevent the appellate court from reconsidering its own rulings of law on a subsequent appeal in the same case." Id. at 567. Application of the doctrine is flexible, and we are allowed to deviate therefrom in cases where "it would effectuate an obvious injustice or where the former appellate decision was clearly erroneous." Griffin v. Campbell, 00-00468, p. 2 (La.App. 3 Cir. 11/2/00); 772 So.2d 370, 372; Cree Oil Co. v. Home Ins. Co., 94-1219, p. 17 (La.App. 3 Cir. 3/8/95); 653 So.2d 620, 629, writ denied, 95-1554 (La.9/29/95); 660 So.2d 875 (quoting Dodson v. Community Blood Ctr. of Louisiana, Inc., 633 So.2d 252, 255 (La.App. 1 Cir.1993), writs denied, 93-3158, 93-3174 (La.3/18/94); 634 So.2d 850, 851). If the prior decision was "palpably erroneous or its application would result in manifest injustice," then the doctrine is inapplicable. Estate of Patout v. City of New Iberia, 01-0151, p. 7 (La.App. 3 Cir. 6/27/01); 791 So.2d 741, 747 (quoting Griggs v. Riverland Med. Ctr., 98-256, p. 6 (La.App. 3 Cir. 10/14/98); 722 So.2d 15, 19, writ denied, 99-0385 (La.5/28/99); 735 So.2d 622).
Aventis asserts the inapplicability of the doctrine, since a writ application is not an appeal and since the denial of such application is a decision not to exercise supervisory jurisdiction and cannot deprive Aventis of its right to appellate review on the merits. However, important for our purposes here is that the doctrine applies to writ decisions exactly as it does to judgments rendered at the conclusion of the appellate process. In First Fed. Sav. & Loan of Warner Robins, Georgia v. Disiere, 542 So.2d 11 (La.App. 4 Cir.), writ denied, 548 So.2d 311 (La.1989), when the trial court overruled an exception of improper venue, the appellants filed an application for supervisory writs and a motion for appeal with the appellate court. The fourth circuit denied the application, stating: "The trial court did not err in its ruling below." Id. at 12. The appellee then filed a motion to dismiss appellants' appeal, arguing that a judgment overruling a venue exception is not appealable. The appellate court explained that while the interlocutory judgment is reviewable by way of supervisory writs, the court had already reviewed the judgment in this manner. Because the fourth circuit found nothing to indicate that its prior ruling was erroneous, it held that ruling to be law of the case, noting that "[i]t has been held that this principle applies to all decisions of an appellate court and not merely those arising from the full appeal process." Id. at 13 (citations omitted). Like the fourth circuit, we decline to review a trial court judgment that a panel of this court has already determined to be free from an abuse of discretion.
Aventis argues further that the doctrine is inapplicable here because our prior decision is palpably erroneous or would result in manifest injustice. Aventis argues abrogation *281 of its fundamental due process rights through the trial court's disallowance of discovery of the nature of the claims against it and of relevant information from absent class members. Rather than being allowed to assess the scope and composition of the potential class, Aventis submits that it was limited to discovery of the eight class representatives, other witnesses hand-selected by plaintiffs' counsel, and those few other potential claimants revealed to Aventis by those representatives and witnesses. As such, Aventis cites its inability both to adequately defend itself at the class certification hearing and to fully present its arguments on the merits of class certification on appeal; particularly, Aventis urges its inability to test the veracity of plaintiffs' assertions of numerosity, commonality, typicality, and adequate representation.
We do not find that our prior decision was palpably erroneous. The law of the case doctrine, therefore, is applicable, and we will not reconsider our own ruling on this subsequent appeal. Therefore, without reviewing the decision again, we note simply that the trial court has broad discretion when regulating pre-trial discovery. Moak v. Illinois Cent. R. Co., 93-0783 (La.1/14/94); 631 So.2d 401. Such discretion will not be disturbed on appeal absent a clear showing of abuse. Id.
The Class Certification
Certification of a class of plaintiffs is an interlocutory ruling, may create irreparable harm to defendants, and thus justifies appellate review. La.Code Civ.P. art. 2083(A); Carr v. GAF, Inc., 97-2325 (La.11/14/97); 702 So.2d 1384. Because any potential error in this judgment certifying three subclasses of plaintiffs cannot practically be corrected on appeal after trial on the merits, the defendants are allowed to appeal such certification. Brown v. New Orleans Pub. Serv. Inc., 490 So.2d 271 (La. 1986).
Louisiana courts are authorized to reference both federal and state class action jurisprudence in the interpretation and application of the statutory requirements for class actions. Duhe v. Texaco, Inc., 99-2002 (La.App. 3 Cir. 2/7/01); 779 So.2d 1070, writ denied, 01-0637 (La.4/27/01); 791 So.2d 637. Moreover, "the trial court is given `wide latitude' in considerations that require an analysis of the facts relative to the prerequisites for class certification in a given case, and its decision on certification must be affirmed unless it is manifestly erroneous." Parry v. Adm's of Tulane Educ. Fund, 98-2125, p. 3 (La. App. 4 Cir. 6/30/99); 740 So.2d 210, 212, writ denied, 99-2297 (La.11/12/99); 750 So.2d 197, citing Adams v. CSX R.R., 615 So.2d 476, 481 (La.App. 4 Cir.1993). And though class certification is reviewed under an abuse of discretion standard, we are not permitted to review the merits of the case. Duhe, 779 So.2d 1070. Indeed, "[i]n determining the propriety of a class action the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood that they ultimately will prevail on the merits." Andry v. Murphy Oil, U.S.A., Inc., 97-0793, p. 3 (La.App. 4 Cir. 4/1/98); 710 So.2d 1126, 1129, writs denied, 98-1158, 98-1178 (La.6/19/98); 720 So.2d 1213, 1214.
Class actions are governed by La. Code Civ.P. arts. 591-97:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.

*282 (4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
La.Code Civ.P. art. 591(A)(1)-(5). Plaintiffs bear the burden of establishing the statutory criteria. Duhe, 779 So.2d 1070. In consideration of this appeal, the defendants' individual arguments will be treated in conjunction with one another.
Numerosity
Representative class members may sue if "[t]he class is so numerous that joinder of all members is impracticable." La.Code Civ.P. art. 591(A)(1). Satisfaction of the numerosity requirement includes a determination of whether the parties are so numerous that separate suits would unduly burden the courts. If a burden would result from the prosecution of individual suits, then the class action is more judicially efficient and therefore better than other procedural avenues. Billieson v. City of New Orleans, 98-1232 (La.App. 4 Cir. 3/3/99); 729 So.2d 146, writs denied, 99-0946, 99-0960 (La.10/29/99); 749 So.2d 644.
The satisfaction of the requirement depends on the facts and circumstances of each individual case. Billieson, 729 So.2d 146 (citing Cotton v. Gaylord Container, 96-1958 (La.App. 1 Cir. 3/27/97); 691 So.2d 760, writ denied, 97-0800 (La.4/8/97); 693 So.2d 147; Dumas v. Angus Chem. Co., 25,632 (La.App. 2 Cir. 3/30/94); 635 So.2d 446, writ denied, 94-1120 (La.6/24/94); 640 So.2d 1349); Ducote v. City of Alexandria, 95-1197 (La.App. 3 Cir. 3/6/96); 670 So.2d 1378; Thomas v. Charles Schwab & Co., Inc., 95-1405 (La. App. 3 Cir. 9/25/96); 683 So.2d 734, writs denied, 96-2579, 97-0009 (La.1/24/97); 686 So.2d 858, 859. There is no set number above which a class is considered to have satisfied the numerosity requirement.[1]Dumas, 635 So.2d 446; Billieson, 729 So.2d 146; Ducote, 670 So.2d 1378; Thomas, 683 So.2d 734; Cooper v. City of New Orleans, 01-0115 (La.App. 4 Cir. 2/14/01); 780 So.2d 1158, writ denied, 01-0720 (La.5/11/01); 792 So.2d 734. However, the numerosity requirement is not met by simply alleging that a large number of potential claimants exist. Dumas, 635 So.2d 446; Clement v. Occidental Chem. Corp., 97-246 (La.App. 5 Cir. 9/17/97); 699 So.2d 1110, writ denied, 97-2884 (La.1/30/98); 709 So.2d 718; Mayho v. Amoco Pipeline Co., 99-620, 99-623, 99-621, 99-624, 99-622 (La.App. 5 Cir. 12/15/99); 750 So.2d 278, writ denied, 00-0110 (La.3/17/00); 756 So.2d 1143. Plaintiffs must show that joinder is impractical and there is a definable group of aggrieved persons. Dumas, 635 So.2d 446; Cotton, 691 So.2d 760; Cooper, 780 So.2d 1158; Mayho, 750 So.2d 278; Clement, 699 So.2d 1110. And while the group must be definable, plaintiffs are not required to identify every member of the potential class prior to certification. Billieson, 729 So.2d 146; Dumas, 635 So.2d 446; Andry, 710 So.2d 1126; Mayho, 750 So.2d 278; McCastle v. Rollins Envtl. Serv. of Louisiana, Inc., 456 So.2d 612 (La.1984). After all, the "difficulty in identifying *283 the claimants is one of the factors that makes joinder impracticable and a class action appropriate." Billieson, 729 So.2d at 154; Andry, 710 So.2d at 1129; McCastle, 456 So.2d at 620. The record establishes that the trial court did not abuse its discretion in finding satisfaction of the numerosity requirement.
In 1999, Louisiana had well over 1,000 crawfish farmers, many of whom also farmed rice. Of those who farmed rice, many purchased ICON-treated seed from the seed distributor defendants. For example, Mr. Lawrence Trahan, owner and manager of Crowley Grain, testified that in 1999, approximately 120 of his customers purchased ICON-treated seed, 20% to 30% of whom farmed both rice and crawfish or leased their rice fields to crawfish farmers. Mr. John Fontane, owner of Guaranty Seed Company, buys his rice seed from Nolan Guillot and Crowley Grain for resale to his customers. And though he could not recall how many pounds of rice he bought from Nolan Guillot in 1999, he testified that 80% to 90% of his 20 rice farming customers also use their fields to farm crawfish. Mr. Leonard Thibodeaux, agronomist and salesman with Nolan Guillot, explained at the hearing that approximately 28 to 35 customers purchased ICON-treated seed in 1999, 10% to 15% of whom also farmed crawfish or leased their rice land to crawfishermen. Crowley Grain's manager, Mr. Marion Stanford, testified that approximately 15 crawfish-farming customers used ICON-treated seed. Mr. Kent Aguillard is president and general manager of Mamou Rice. He testified that in 1999 and 2000, about a dozen farmers who cultured both rice and crawfish purchased ICON-treated seed.
Mr. Donald McDaniel is a rice and crawfish farmer who used ICON-treated seed. This crawfish farmer of 25 years testified that in 1999, he lost between 500-900 pounds of crawfish. He also testified that through his personal observations in 2000, approximately 20 to 25 crawfish farmers experienced crawfish mortality. After a knowledge foundation was laid, these statements were not objected to. In 2000, he experienced total mortality. Class representative Mr. John Leonards is also both a rice and crawfish farmer, having farmed rice for approximately 15 years and crawfish for approximately six years. At the hearing, he stated that he knew 25 to 35 crawfishermen who claimed to have sustained losses due to ICON. When the defendant objected on hearsay grounds, the trial court allowed him to testify as to how many crawfish farmers he had knowledge of, but no testimony was allowed as to what any of those farmers said. Based upon class representative Mr. Benjamin Gunniss' personal knowledge, approximately 25 crawfishermen experienced problems with the introduction of ICON to their fields. Here again, the trial court allowed the witness to testify over objection as to his personal knowledge of the number of crawfishermen from whom he received complaints. The trial court did not allow him to testify as to what these crawfishermen said. Mr. Joseph Godeaux is a class representative and has been a crawfish farmer since 1999. Prior to that, he was a location manager at Terra International, a seed company, for 15 years. While employed at Terra, he estimated having fielded 30 to 40 phone calls from crawfish farmers complaining about crawfish mortality. There was no specific hearsay objection to this statement. He also claimed to personally know approximately 100 farmers who claimed to experience a reduction in crawfish production due to ICON. The trial court overruled the hearsay objection. Mr. Trahan of Crowley Grain explained that he received between 20 and 40 complaints from farmers regarding crawfish mortality. Upon hearsay objection, *284 the trial judge stated that the witness could testify as to the number of complaints, but not the nature of the complaints. Mr. Stanford of Crowley Grain testified that most of the 15 crawfish farmers he spoke with complained about ICON tailwater being pumped into their ponds. The hearsay objection was overruled. Mr. Michael Redlich is an Aventis employee. He testified that after the commercial introduction of ICON, he too began receiving complaints about crawfish mortality. In response, he conducted approximately 17 personal investigations. There was no objection to Mr. Redlich's testimony concerning these investigations. Dr. James Avault, Jr., retired professor of aquaculture at L.S.U., suggested that well over 100 crawfish farmers were affected by ICON. No hearsay objection was made.
Aventis argues that the trial court's numerosity finding was improperly based, in part, on the above-recounted hearsay testimony. Plaintiffs are correct to point out that Aventis did not raise hearsay objections to all of the testimony in question; therefore, appellate review of those statements does not lie. Nevertheless, we do not believe any of the challenged statements are hearsay.
As defined in La.Code Evid. art. 801(C), hearsay is "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." (emphasis added). Witnesses at the hearing attested to knowledge of approximate numbers of crawfish farmers negatively affected by ICON, and such knowledge may have been based upon the farmers' claims to those witnesses, either via phone conversations, personal conversations, or personal observations by the witnesses. However, the evidence of absent farmers' claims cannot rightfully be labeled hearsay, since such evidence was not being offered for the truth of such claims. For purposes of this appeal, it is of no moment whether the claims of these farmers were true. Indeed, to make that determination would improperly require our consideration of the merits of this case, which is disallowed at this stage of the proceeding. The claims were simply offered for what they areclaimsand not for their legitimacy. These claims are what help establish the number of affected crawfish farmers. The legitimacy of such will be adjudicated at trial on the merits, for that goes to the ultimate question of liability.
Sufficient facts have been alleged and demonstrated by plaintiffs to show that the requirements of numerosity have been met. Based upon the facts and circumstances of this case, we find that the record contains proof of a definable group of aggrieved parties large enough that joinder would be impracticable. Plaintiffs have not simply alleged that a large number of potential claimants exist; they have offered evidence of numerous aggrieved crawfish farmers through testimony concerning the number of crawfish farmers who bought and used ICON-treated seed and through testimony concerning approximate numbers of crawfish farmers negatively affected by ICON.
Every member of the potential class has not been identified; however, this does not serve to defeat certification. To the contrary, it makes certification more appropriate. Indeed, in Royal St. Grocery, Inc. v. Entergy New Orleans, Inc., 99-3089, 99-3090 (La.App. 4 Cir. 1/10/01); 778 So.2d 679, writ denied, 01-0374 (La.4/12/01); 789 So.2d 594, because of difficulty identifying all aggrieved parties, the court found joinder impractical where there was evidence of 4,200 potential class members, but where only 62 aggrieved parties had been already identified for inclusion. In Johnson *285 v. Orleans Parish Sch. Bd., 00-0825, 00-0826, 00-0827, 00-0828 (La.App. 4 Cir. 6/27/01); 790 So.2d 734, writs denied, 01-2216, 01-2225, 01-2215 (La.11/9/01); 801 So.2d 378, 379, the court reviewed the certifiability of a class action by former school students and employees for damages from exposure to hazardous and toxic substances. The fact that only one aggrieved plaintiff had come forward out of potentially thousands was irrelevant to the court, since testimony showed that the school served between 800 and 900 students per year during the time in question.
We note that our determination is based in part upon the number of putative class members, but is also based upon considerations of judicial economy in avoiding multiplicity of lawsuits, financial resources of class members, and the size of their individual claims. Johnson v. E.I. Dupont deNemours & Co., Inc., 98-229 (La.App. 5 Cir. 10/14/98); 721 So.2d 41.
Aventis cites Hampton v. Illinois Cent. R. Co., 98-0430, 98-0431, 98-0432, 98-0433, 98-0434, 98-0435 (La.App. 1 Cir. 4/1/99); 730 So.2d 1091, where numerosity was not satisfied, in part, because the plaintiffs did not present any expert testimony causally linking the complaints of physical and emotional symptoms of the class representatives to the ammonia leak. And though the court in Hampton cited several other deficiencies in the record upon which its holding was based, Aventis argues that application of the case prevents plaintiffs here from showing a large number of farmers who believe that they have been aggrieved. Aventis notes that ICON was introduced contemporaneously with a severe drought. Many crawfishermen, according to Aventis, believe that ICON was the cause of crawfish mortality of that year, and the defendant argues that that is not reason enough to satisfy numerosity. However, whether ICON caused crawfish mortality, whether mortality was the result of the drought, or whether it was the result of another event is the primary question in this casea question that goes to the merits and one which we are not authorized to review at this stage. We do not construe the "aggrieved persons" aspect of numerosity as requiring the identification of farmers who can prove that their crawfish died as a result of ICON-treated rice seed, for such determination will be made at trial on the merits. It is enough that plaintiffs have presented evidence of a sufficient number of crawfish farmers who have incurred injury, the alleged basis of which is ICON-treated seed.
G & H Seed alleges vagueness and overbreadth of the Subclass 1 definition. Subclass 1 encompasses "All persons or legal entities from January of 1999 who purchased ICON-treated seed for the planting of rice or for crawfish operations in the State of Louisiana and who allege financial loss and damages as a result of said crop's exposure to ICON." G & H Seed suggests that the language of Subclass 1 expands the scope of that group of potential claimants beyond any evidence that was presented by the plaintiffs at the hearing. In other words, G & H Seed argues that the language encompasses claimants who purchased ICON-treated rice seed for planting of rice and who allege damages as a result of exposure of such rice crop to ICON and claimants who purchased ICON-treated rice seed solely for crawfish operations. Such an interpretation may indeed expand the scope of that group beyond the evidence presented. However, while this suit was not initiated by claimants who allege damage to their rice crop, the language of Subclass l's identification can still be read to encompass the claimants who did initiate this suit and others who are members of the putative class, namely, those who purchased *286 ICON-treated seed for rice operations and who allege damages as a result of their crawfish crop's exposure to ICON.
We are aware that the seed distributor defendants' customers are primarily rice farmers and that rice farmers are not members of the putative class. However, the evidence adduced at the hearing shows that many of the rice farmers who purchased ICON-treated seed were also crawfish farmers whose use of ICON-treated seed affected other crawfish farmers. We are satisfied as to the sufficiency of the evidence presented regarding these claimants, and therefore do not find the definition of Subclass 1 to be vague or overbroad.
With respect to the seed distributor defendants, plaintiffs offered sufficient proof of numerosity for each of them, even though a limited number of putative class members purchased ICON-treated seed from them. As defendants Nolan Guillot and Mamou Rice point out, they did not necessarily sell ICON to all putative class members. G & H Seed argues that only a very limited number of potential claimants could possibly be entitled to a recovery from any seed company, much less those named as defendants. G & H Seed argues that plaintiffs failed to establish the number of rice farmers purchasing ICON-treated rice seed from each defendant. We find no merit to these arguments.
The Subclass definitions are not worded such that the numerosity requirement is defeated even though each of the seed distributor defendants did not sell ICON-treated seed to each individual putative class member. The Subclass definitions do not reference any one particular seed distributor defendant, nor do they require that putative members stake claims against one particular seed distributor in order to be a member of the putative class. For example, as stated earlier, Subclass 1 encompasses individuals who purchased ICON-treated seed for rice operations and who allege damages to their crawfish crop's exposure to ICON. Subclass 2 encompasses individuals who farmed crawfish in ponds which had been planted with ICON-treated seed and who allege damages as a result of exposure to ICON. And though these putative class members may not have purchased the ICON-treated seed themselves, as with Subclass 1, these crawfish farmers were exposed to ICON-treated seed purchased from seed distributors, and are therefore included in the numerosity calculation. The same is true for those in Subclass 3 who participated in a sharecropping arrangement. Plaintiffs have dubbed Subclass 3 the "tailwater Subclass," comprising those crawfish farmers who allege damage from ICON runoff or tailwater. This ICON was purchased from seed distributors and members of Subclass 3 are therefore included in the numerosity calculation.
The judgment's three Subclasses potentially implicate the alleged liability of all collective seed distributor defendants, and from Aventis. We agree with plaintiffs that the three Subclasses were certified to pursue claims against all seed distributor defendants and also to pursue claims against Aventis, the primary defendant-manufacturer. Refusal to certify a defendant class is not evidence to the contrary. Under the theories advanced by plaintiffs, the seed distributor defendants can only be liable to either individuals to whom ICON-treated seed was sold or those who crawfished in rice fields contaminated with ICON-treated seed purchased from one or more of the seed distributor defendants. According to plaintiffs, those class members who did not purchase seed from the seed distributor defendants and who did not crawfish in fields contaminated with *287 ICON-treated seed purchased from them have no claims against the seed distributor defendants. The trial court did not abuse its discretion in collectively considering all defendants, including Aventis in this case for purposes of calculating numerosity of the plaintiff class.
Commonality
Representative class members may sue if "[t]here are questions of law or fact common to the class." La.Code Civ.P. art. 591(A)(2). The common questions must predominate over questions affecting individual members. La.Code Civ.P. art. 591(B)(3). "The test of commonality is not a demanding one, and requires only that there be at least one issue, the resolution of which will affect all or a significant number of the putative class members. A common question is defined as one which when answered as to one class member is answered as to all of them." Duhe, 779 So.2d at 1078 (citations omitted). Moreover, "the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification." Bartlett v. Browning-Ferris Indus. Chem. Serv., Inc., 99-494, p. 3 (La.11/12/99); 759 So.2d 755, 756. Considering the evidence, we find no manifest error and that a common trial would be the most efficient way to determine the potential liability of Aventis and the seed distributor defendants. We do not believe the trial to be one where so little will be decided that judicial efficiency is lost.
Generally, Aventis argues that plaintiffs' damages have different causes; the alleged torts of misrepresentation differ for different groups of plaintiffs; plaintiffs have claims against different tortfeasors; and plaintiffs' theories of recovery against various tortfeasors are different as are defenses raised against plaintiffs' claims. Aventis suggests that any one of these differences prevents class certification. We disagree.
We begin this analysis with Aventis' submission that plaintiffs' claims are only common insofar as they allege damage to crawfish by ICON. Beyond that, the defendant argues that class certification is prevented since there are too many potential causes for reduced crawfish production among claimants. Aventis argues that each loss must be examined on a case-by-case basis to determine what part, if any, ICON played in crawfish production problems. G & H Seed argues that the only common questions that apply to all members of these three subclasses is whether or not ICON is defective and damaged the crawfish production in 1999 and 2000. And while that question may satisfy the commonality requirement as to Aventis, G & H Seed argues that it cannot satisfy the commonality question for the seed distributor defendants.
The drought is cited by the defendants as the predominant factor responsible for reduced crawfish yield. Dr. Robert Romaire stated that the amount of rainfall could be one factor explaining the decline, and Mr. Mark Shirley testified that in his opinion, the drought affected crawfish production. Dr. Jimmy Avery opined that the drought was the primary cause of the overall statewide reductions in crawfish. This testimony is largely insignificant for our purposes, since it goes to the ultimate question of causation. At this procedural stage, we need only determine, as we have, that questions associated with the role the drought played in crawfish losses are common questions, not individual ones.
There is no evidence that proof of the drought's effects would be individual to class members, and such should be determined on a class-wide basis. Indeed, Dr. *288 Avault testified the drought's impact spanned the entire rice/crawfish area and that if it played a part in causing the crawfish mortality, it had a uniform effect. Dr. Romaire testified that the most predominant issue of low crawfish production in Louisiana has been the drought, ICON, or a combination thereof. He also testified that crawfish exposed to ICON potentially have a higher mortality rate than those not exposed. The witness did not feel comfortable stating that ICON was responsible for the crawfish mortality. This discomfort is understandable, given that this is precisely one issue that must be determined at trial on the merits. It is for this reason that we decline to underscore those parts of Dr. Avault's testimony that plaintiffs argue serve as the most persuasive evidence in support of the proposition that the drought is not responsible for the loss in production. It is enough to say that we find no error in the trial court's determination that the drought's effect, if any, can be determined by way of a class action.
Aventis also highlights Mr. Shirley's testimony that water temperature and water oxygen levels can cause crawfish mortality. Dr. Romaire said that the final flood date, the date the farmer floods his fields after his rice harvest is complete, affects water quality management, which affects yield. A farmer's decision to flood his fields, along with the amount of crawfish "seed" introduced by the farmer, is linked to his individual farming practices, another potential cause that Aventis argues defeats commonality. Dr. Romaire testified that crawfish yield depends upon varying farming practices. Dr. Avault and Mr. Shirley both agreed. Aventis argues that the only way to know what caused a particular farmer's loss of production is to analyze his situation on a case-by-case basis.
We do not believe that individual farming practices defeat commonality. While Dr. Romaire may have suggested that farming practices affect production, he also testified that "if there are slight variations in production procedures, one would not expect that to be blamed. Minor variations in production practices would not be considered to be a major cause of the widespread reduction of crawfish production in Louisiana." Similarly, Dr. Avault testified that the variations in farming practices do not account for crawfish mortality. Mr. Shirley testified that variations in farming practices would not have dramatically affected the crawfish mortality. We cite this testimony, not to make a causative determination, but to support our conclusion that individual farming practices do not destroy commonality.
Aventis argues that because the drought, individual management practices, and other factors could represent potential causes for class members' damages, class certification is precluded. In support of this argument, it cites LaFleur v. Entergy, Inc., 98-344 (La.App. 3 Cir. 12/9/98); 737 So.2d 761 and Ford v. Murphy Oil U.S.A., Inc., 96-2913 (La.1997); 703 So.2d 542. In LaFleur, plaintiffs sued Entergy for damages due to storm-related power outages. The court failed to find commonality, quoting the trial court's reasons. According to the trial court, the testimony
showed numerous other causes of outages caused by the ice storm which could not have been prevented by Entergy and were not due to its negligence. Ice loading caused downed poles and wires, broken cross arms, anchors, and guy wires. The ice and freezing temperatures caused frozen switches and fuses. In some instances, the customer's own equipment was damaged by ice[,] causing outages and preventing and/or delaying restoration of power. Restoration *289 was dependent on multiple varying factors.
LaFleur, 737 So.2d at 766. The court reasoned that because a variety of causal links would have to be proven by each individual plaintiff, class certification was inappropriate. The court found no manifest error with the determination that "plaintiffs failed to prove that common issues outweighed those particular to the individual plaintiffs." Id. at 767.
We find LaFleur distinguishable. Evidence in the record suggests that individual farming practices were not a cause of the increase in crawfish mortality. Nevertheless, while we make no causative determination, we are confident in stating that even if the drought, farming practices, or ICON are advanced at trial as being potential causes, such potential causes would not amount to near as many as advanced in LaFleur. A contrary finding would leave us wondering how any negligence class action suit could ever be certified, since every negligence analysis requires a determination of causation, including the potential presence of intervening or superceding causes.
In Ford, plaintiffs sued several petrochemical plant owners claiming physical and property damages as a result of combined and individual emissions from the defendant plants. Declining to find commonality, the court stated that
[t]here appear to be far too many individual liability issues which could not be tried separately, as that is prohibited by [former] article 593.1(C)(1). As aptly stated by Judge Schott in his dissent, "[o]ne plaintiff cannot prove individual causation and individual damage based on the exposure of another plaintiff to a particular emission." 681 So.2d at 411.
Ford, 703 So.2d at 549.
Ford has been distinguished many times since its publication. The court in Scott v. American Tobacco Co., 98-0452, pp. 4-5 (La.App. 4 Cir.1998); 725 So.2d 10, 12-13, writ denied, 98-3016 (La.2/26/99); 731 So.2d 189 explained that "Ford dealt not only with a combination of substances emitted by different defendants, but combinations that according to plaintiff class' own allegations might involve different combinations for every member of the supposed class as well as effects that would have been different for each member of the class." The court in Scott found Ford distinguishable, since Scott was concerned basically with one substance only, nicotine, and one effect only, addiction.... We find that the reasoning in McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612 (La.1984), is applicable to the instant case where the court held that it did not matter that each member of the class was not harmed on the same date or sustained the same amount of injury. Tracing the complaint of the class in the instant case to a single source, nicotine, is consistent with the admonition found in Ford that "only mass torts `arising from a common cause' ... may be appropriate for class certification ..." Id., 703 So.2d at 550.
Id. at 13.
In Johnson, 790 So.2d 734, current and former residents, current and former business owners and employees, and former school students and employees sued multiple defendants for damages from exposure to hazardous and toxic substances in landfill area. One defendant, the School Board, urged the application of Ford and argued that various causes claimed by plaintiffs rendered certification improper. Other defendants, including the City and the Housing Authority of New Orleans, urged Ford as well, arguing that an individualized analysis of effects of chemicals from various sources would need *290 to be conducted, along with the effects of those chemicals upon individual plaintiffs and when they occurred. The court in Johnson distinguished Ford and stated that "[a]lthough [the class members] must prove individual injuries, they allege that their injuries were caused by the same `common' conduct." Johnson, 790 So.2d at 746.
As with Johnson, the alleged injuries here all result from common conductthe introduction of ICON. And, as in Scott, our concern is only with one substance and its effect on the crawfish population. Even with causal concerns associated with individual farming practices may arise, ICON is still alleged to be a common potential cause. The drought, too, is a common potential cause. In other words, though some other cause may prove significant, all class members allege that ICON caused their damages. In Scott, "[p]roof of the addictive quality of nicotine is essential in the claims of all the plaintiffs so that there is a common character among the rights of the representatives and the absent members...." Scott, 725 So.2d at 14. Here, proof of the alleged ill-effects of ICON is essential to all claims, creating a common character among rights. Since class members were allegedly harmed on different dates and sustained different amounts of alleged injury, individual issues may present themselves, but such would not defeat commonality.
At trial, common proof of causation and damages may include the chemical makeup of the ICON and its effect on crawfish in general and on a pond's soil and water, the movement of ICON from one field to another and through the water systems, whether its chemical composition changes through movement; ICON's permanence; or why the drought did not cause crawfish mortality. If this common proof is made, class members will then individually prove that ICON contaminated their ponds, the method of contamination, and any remaining individual questions associated with the different theories of alleged liability. We, therefore, find no manifest error with the trial court's determination that common liability issues outnumber individual ones. A class-wide trial would eliminate major issues from each member's required proof.
Having determined that causal issues do not defeat commonality, we focus upon evidence that supports the trial court's finding of commonality. In our estimation, the primary common question in this case is whether ICON damaged crawfish production in 1999 and 2000. We agree with plaintiffs that this question, resolution of which touches upon every class member's claims, includes but is not limited to questions associated with the effect of the drought on the decline in crawfish production; whether ICON affects rice-crawfish rotational farming; whether ICON kills crawfish; whether ICON-infused tailwater kills crawfish; whether the seed distributors are considered manufacturers of ICON; whether ICON contaminates soil; whether ICON-treated seed was fit for its intended use; whether ICON is a defective product; and whether ICON advertisements and brochures were misleading.
Product liability claims are urged by all three Subclasses. Proof of the elements set forth in the Louisiana Products Liability Act[2] will be identical, regardless of which class representatives attempt such proof. Considerations for this proof will involve Aventis' alleged manufacture of ICON, the propriety of classifying the seed distributors as manufacturers, *291 ICON's alleged ill-effects on crawfish, alternative design, reasonable anticipation, and so forth. The seed distributor defendants are required by Aventis to treat rice seed with ICON. As such, we agree with plaintiffs that common proof as to these defendants will be required to show whether they produced a defective product within the meaning of the Louisiana Products Liability Act or the redhibition articles and whether their treatment and sale of rice seed makes them manufacturers.
Those who purchased ICON-treated seed directly from one or more of the seed distributors potentially have, as purchasers, claims in redhibition, breach of contract, and fraud against the seed distributor defendants. Moreover, product liability and redhibition claims may potentially lie with those who conducted crawfish production operations in fields laden with ICON-treated seed purchased from one or more of the seed distributor defendants.
All three plaintiff subclasses assert negligence claims, requiring consideration of law and facts common to the class, as well as a negligence analysis examining the development, manufacture, marketing, testing, and selling of ICON. Only ICON-purchasing members of Subclass 1 will claim redhibition and breach of contract. Common proof of redhibition will require a determination of whether the product was rendered useless, its use so inconvenient, or its usefulness or value was so diminished so as to raise certain presumptions about the buyer's conduct. Aventis urges that farmers will have to be questioned individually about their pre-purchase knowledge of ICON's effect on crawfish. However, just because Aventis may be able to rebut the redhibition presumptions at trial by proof of the representatives' pre-purchase knowledge, that does not mean that the redhibition claim is not common to the class. While some of the elements of the claim may merit subjective inquiry, other elements of the claimlike whether the product is redhibitorily defective generallycall for common questions. Moreover, plaintiffs' breach of contract claim will call for common proof of, among other things, whether the product was fit for its intended use.
The fraud-based claims are asserted only by Subclass 1, those who purchased ICON. Plaintiffs claim negligent and intentional misrepresentation and fraudulent concealment. Aventis, Nolan Guillot, and Mamou Rice point to Banks v. New York Life, 98-0551 (La.1999); 737 So.2d 1275, cert. denied, 528 U.S. 1158, 120 S.Ct. 1168, 145 L.Ed.2d 1078 (2000) where suit was filed on behalf of those who had purchased life insurance from the defendant. Since the alleged misrepresentations were written in the company's illustrations and based upon oral statements by its insurance agents, the court declined to find commonality, stating that where individual reliance will be an issue, a fraud class action cannot be certified.
First, we find Banks distinguishable, primarily because in that case, the marketing and sale of insurance policies were conducted by 1,000 insurance agents who sold 101,109 policies to Louisiana residents, 1,850 of whom comprised the class. Here, at issue is Mr. Redlich's conduct alone and Aventis' brochures and advertisements. Considering the limited fonts of information upon which class members relied, the subjective inquiries in this case will not be nearly as daunting as they would have been in Banks. Moreover, we find the alleged misrepresentations in this case to be much more uniform than in Banks.
In Dumont v. Charles Schwab & Co., Inc., 95-2010 (La.App. 4 Cir. 2/29/96); 670 So.2d 548, the trial court certified a class *292 of plaintiffs against a financial institution defendant, alleging breach of fiduciary and mandatary duties for failure to disclose certain facts to its customers or for failure to request permission from them. The defendant argued that certification was precluded since individual issues as to each customer existed, including knowledge and reliance. Relying heavily upon State ex rel. Guste v. General Motors Corp., 370 So.2d 477 (La.1978), the court found that commonality existed since individual issues such as knowledge were largely conjectural, whereas certain other issues were common to every case.
In this case, there will be a necessity for subjective "reliance" inquiry for the misrepresentation claims, but common questions also exist, and will include the content and extent of circulation of the defendants' brochures and other advertisements. Common questions may also include the content and consistency of Mr. Redlich, Aventis' sales representative's, ICON presentations to farmers across the state, even though farmers went to different presentations, did not attend them at all, or got their information from other sources, such as their seed distributors or crop consultants. If there is question as to whether ICON's on-label use of the product will kill crawfish, then that too is common, applicable to all class members.
Because the class members will pursue alternative theories of liability, not all members will have claims against the named seed distributor defendants. This, however, does not defeat certification, and we agree with plaintiffs that the inclusion of members who are unable to recover against the seed distributor defendants do not overburden these defendants. They need only defend themselves against claims directed toward them.
Despite the individual questions, we believe that common questions predominate and in the interest of efficiency, we decline to fracture the class action on this issue. We feel compelled to note here that any doubt as to certification should be resolved in favor of certification. McCastle v. Rollins Envtl. Serv. of Louisiana, Inc., 440 So.2d 812 (La.App. 1 Cir.1983), rev'd on other grounds, 456 So.2d 612 (La. 1984).
Aventis argues the inappropriateness of certification based on each claimant's different collection of tortfeasors against whom fault must be allocated, including Aventis, the claimants themselves, seed distributors, rice farmers, aerial applicators, and crop consultants. In support, Aventis cites Simeon v. Colley Homes, Inc. 00-2183 (La.App. 1 Cir. 11/14/01); 818 So.2d 125, where plaintiffs contracted with the Colley Homes to construct a home with a synthetic stucco exterior. When plaintiffs experienced water intrusion into their homes, they sued Colley Holmes, the manufacturer of the stucco, and the manufacturer's Louisiana distributor. The court found that individual issues predominated over common issues, noting that "[i]n addition to the individualized issues related to the role of third parties in causing the water damage, the question of compensation for damage to the homes will raise further individualized issues such as the extent of damage, the type of repair needed on each house and the costs of the repairs." Id. at 130.
It is well established that "individual questions of quantum do not preclude a class action when predominant liability issues are common to the class." McCastle, 456 So.2d at 620. We have determined above that predominant liability issues related to the toxicity of ICON are indeed common to the class. If individual questions of damages do not preclude class action, and if fault allocation dictates allocation of damages, then fault allocation *293 cannot preclude the action, notwithstanding the intricacies associated therewith.
In re New Orleans Train Car Leakage Fire Litigation, 98-2399, 98-2622 (La.2/24/99); 728 So.2d 853, where a jury returned a compensatory and exemplary damage verdict in favor of 20 plaintiffs and allocated fault shares among nine defendants is instructive. At the next phase of trial, when punitive damages were awarded, fault was allocated among the defendants in different percentages than were assigned at the previous phase. We cite this case only as exemplary; the crux of the opinion was unrelated to the interplay between allocation of fault and class action Isnsuits. While we agree with Aventis that the allocation of fault in this case may be necessary and may be more than simplistic, the defendant has cited no case suggesting that fault allocation is inapplicable to class action suits.
Aventis argues that its defenses will differ among plaintiffs and that different groups of plaintiffs will have different theories of liability against the defendants. Some plaintiffs will claim redhibition and/or breach of contract, and among those claimants that have a claim for redhibition, Aventis contends that different factual and legal questions exist. Non-purchasers have only a product liability claim, and the elements of proof are different from those required for redhibition. Moreover, Aventis submits that claims for remediation of soil and/or water can only be brought by landowners.
The court in Lailhengue v. Mobile Oil Co. 94-2114, p. 10 (La.App. 4 Cir. 6/7/95); 657 So.2d 542, 548 explained that "plaintiffs' claims arose from a common occurrence, and common questions of fact are presented. The pleadings introduced by plaintiffs show that the class members assert common theories of liability against defendants and that defendants' defenses are common to plaintiffs' claims." (emphasis added). We agree with plaintiffs that the legal theories, though they differ among certain class members, are merely different ways of making a determination of whether ICON is toxic to crawfish. The theories are all linked in their treatment of questions surrounding whether ICON is a fit product to introduce onto the market. We are confident that even though multiple theories of liability exist, they will not involve distinct factual and legal questions. As discussed earlier, many common questions must be answered as to each. In short, we believe as the court did in Andry, 710 So.2d at 1127, that "the alleged liability of the defendants is derived from the same theories of liability. There are no material variations in the elements of the claims of the various categories of class members. Although there obviously are individual questions of quantum, this does not preclude a class action where, as here, predominant liability issues are common to the class." (Emphasis added).
Typicality and Adequacy
We consider the typicality and adequacy requirements in conjunction with one another. Representative class members may sue if "[t]he claims or defenses of the representative parties are typical of the claims or defenses of the class." La. Code Civ.P. art. 591(A)(3). The representatives' claims must be a cross-section of, or typical of, the claims of all members, and the test for typicality is not a demanding one. Duhe, 779 So.2d at 1079 (citations omitted). Indeed, "[i]t satisfies typicality if the representative plaintiffs' claims arise out of the same event or course of conduct as the class members' claims and are based on the same legal theory." Id. (citation omitted).
Representative members may also sue if "[t]he representative parties will fairly and adequately protect the interests of the *294 class." La.Code Civ.P. art. 591(A)(4). This requirement protects the unnamed class members' legal rights. Duhe, 779 So.2d 1070.
The test often used for adequate representation consists of three elements: (1) the chosen class representatives cannot have antagonistic or conflicting claims with other members of the class; (2) the named representatives must have a sufficient interest in the outcome to insure vigorous advocacy; and (3) counsel for the named plaintiffs must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously.
Id. at 1079 (citation omitted).
Aventis also asserts that no determination was made regarding the proposed class representatives and their ability to represent the class. Because plaintiffs' counsel neglected to provide information regarding absent class members, Aventis contends that the trial court had no information upon which to base the representative nature of the representatives' claims. Moreover, the trial court's judgment did not mention names of class representatives. Plaintiffs' eight proposed class representatives are alleged to come from too narrow a segment of the potential plaintiff population, and Aventis argues that more than eight are required.
We agree with plaintiffs that the eight representatives who were appointed cover all relevant variations of class members. The trial court heard testimony from each of the proposed representatives, seven of whom were questioned directly by the court. Moreover, because eight non-representatives testified, we do not believe that the trial court lacked information on absent class members. Some representatives purchased ICON-treated seed; some farm crawfish and rice; some farm only crawfish; some claim to have used ICON-laden water; and, at least one is a landlord. All allege financial loss and damages. In short, each representative has alleged crawfish losses associated with ICON-treated seed or ICON-laden tailwater. Of those who purchased ICON-treated seed, they did so from seed distributor defendants. Of those who farmed crawfish, they did so in fields planted with ICON-treated seed that had been purchased from the seed distributor defendants either by themselves (because they also farmed rice) or by rice farmers. Because of the manner in which Aventis required the seed distributor defendants to treat rice seed with ICON, claims against one will be the same or similar to all. It is for these reasons that we find no merit to Nolan Guillot and Mamou Rice's argument that the representatives' claims cannot be typical of the members' claims since there was no evidence of any representative having purchased ICON-treated seed from either defendant, or having farmed in fields planted with ICON-treated seed purchased from either defendant. G & H Seed and Crowley Grain concede typicality. We find no merit to Aventis' contention that because Mr. Gunniss and Mr. Robin are leaving the crawfish industry, they are incapable representatives.
Haas-Hirsch represents landowners who collect rent from crawfish farmers farming their land. Aventis claims that Haas-Hirsch essentially forgave the debts of their crawfish farmer tenants; as such, Haas-Hirsch has no claim and cannot be a representative for all landowners. Whether Haas-Hirsch did forgive the debts and whether Aventis will be successful in having the claims dismissed are questions best suited for trial on the merits. Moreover, we view these questions as going toward individual damages, which, as we have already stated, will not defeat certification *295 when predominant liability issues are common to the class.
We do not interpret the typicality and adequacy requirements as requiring representatives to embody every characteristic of every class member. The representatives' claims arise out of the same event, the introduction of ICON, and the claims are based on the same legal theories. We find no manifest error in the trial court's determination of typicality. In terms of adequacy, there is no evidence that the representatives have conflicting claims with class members, that they do not have a sufficient interest in the outcome, or that plaintiffs' attorneys are not competent, experienced, qualified, or able to vigorously conduct the litigation.
Objectiveness
Representative class members may sue if "[t]he class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case." La.Code Civ.P. art. 591(A)(5). "The class need not be so clearly defined that every class member can be identified at the commencement of the action." Duhe, 779 So.2d at 1080. Implicit in the fact that the class "is or may" be defined objectively is that the trial court can modify the class upon acquisition of relevant facts. Id. Indeed, "[i]n the process of class certification, or at any time thereafter before a decision on the merits of common issues, the court may alter, amend, or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action." La. Code Civ.P. art. 592(A)(3)(c).
Aventis argues that the class was not objectively defined in terms of ascertainable criteria since the trial court did not define one single class for certification, but rather, defined three subclasses. However, Aventis cites no rule mandating that one class be separately defined. If, according to La.Code Civ.P. art. 592(D), "a class may be divided into subclasses and each subclass treated as a class....," then we see no problem with the subclassification having already been made by the trial court. Indeed, in Clement, 699 So.2d at 1114, the appellate court explained that "the creation of categories or subclasses [by the trial court] is [a] ... general assumption extracted from the evidence which allows the judge to create groupings to assist in the efficient management of the litigation." The appellate court then affirmed the trial court's creation of a three class subgrouping. For these reasons, we find that the subclass definitions are neither amorphous, vague, nor indeterminate, and therefore "provide a sufficient basis upon which to determine the scope of the class and the propriety of permitting plaintiffs to represent all or part of it." Id.
Aventis suggests that the trial court disregarded the fact that the evidence only established injured parties in three parishes, and erroneously granted a state-wide class in violation of the rule that "[t]he establishment of geographic boundaries of a Class must be based on evidence in the record." Lailhengue, 657 So.2d at 549. In support of its argument, Aventis points to the testimony of Dr. Philip Bedient, an environmental engineer, who said that the Red River acts as a natural barrier separating the northeastern part of the state from the southwestern part, thereby preventing the flow of ICON from the northeastern side of the river to the southeastern side. Aventis also points to the testimony of Mr. Stuart Stover, Jr., a hydrogeologist, who said that the Mississippi River and the Atchafalaya Basin act as natural barriers as well. The *296 class definition, according to Aventis, should have been confined to the area south of the Red River and west of the Mississippi River. Since the trial court allegedly failed to consider this evidence, Aventis argues that the case should be remanded for a determination of proper geographic boundaries of the class, as was done in Lailhengue.
In Lailhengue, the explosions and fire at the refinery expelled oil, soot, insulation, asbestos and other debris throughout the information to decide whether they are neighboring community. Here, the allegedly damaging chemical was not as localized as in Lailhengue. The evidence reasonably indicated that ICON was used at various locations throughout the state. We therefore find no manifest error, especially in light of the fact that
[a] precise geographic definition of the class is not absolutely necessary. In light of the purpose of the class action procedure, it is objectively reasonable for the geographic area to be defined broadly so as to encompass all potential class members. See Andry, 710 So.2d at 1130. The defendant argues that the plaintiffs do not define with specificity which individuals or businesses would be included or excluded from the proposed sub-classes. Contrary to the defendant's the proposed subclasses are sufficiently defined in order to give potential class members enough information to decide whether they are included within the class and to enable class members to decided whether to opt of the class.
Royal St. Grocery, Inc., 778 So.2d at 686.
Paredominance, Superiority, and Manageability
In addition to those prerequisites set out in La.Code Civ.P. art. 591(A), an action may be maintained as a class action if Article 591(B)[3] is satisfied as well. We *297 have already determined that common questions of law and fact predominate over individual ones. Moreover, there is no evidence that the class action is not superior for the fair and efficient adjudication of the controversy. The whole of this opinion demonstrates that a common character of rights exist, thereby making the class action the superior adjudicatory method. We believe that class treatment of claims against both Aventis and the seed distributor defendants will effectuate substantive law, judicial efficiency, and individual fairnessthe basic aims of a procedural device. Duhe, 779 So.2d 1070. Moreover, though trial courts face added responsibility in the management of class actions, the procedural rules grant to the courts a certain amount of discretion to taper the proceeding as it moves forward. We are confident that the trial judge in this case will exercise prudently that grant of authority.

IV.

CONCLUSION
For the reasons assigned, the judgment appealed from is affirmed insofar as it certifies a class of plaintiffs and reversed against Terral Seed, Inc. We dismiss Terral Seed, Inc. from this lawsuit.
All costs of this appeal are taxed equally against the Defendants-Appellants, Nolan J. Guillot, Mamou Rice Drier and Warehouse, Inc., G & H Seed Company, Inc., Crowley Grain Drier, Inc., and Aventis Crop Science, USA LP.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR TRIAL ON THE MERITS.
NOTES
[1] In Vela v. Plaquemines Parish Government, 94-1161 (La.App. 4 Cir. 6/29/95); 658 So.2d 46, the fourth circuit cited Adams v. CSX Railroads, 615 So.2d 476 (La.App. 4 Cir. 1993) for the proposition that "[a] presumption arises that joinder is impractical if more than 40 class members exist." Vela, 658 So.2d at 48. Adams simply does not stand for this. To the contrary, the court in Adams stated that "whether the class is sufficiently numerous is not dependent upon a specified figure; this determination must be made upon review of the facts of each case." Adams, 615 So.2d at 481.
[2] La.R.S. 9:2800.51 et seq.
[3] La.Code Civ.P. art. 591(B):

An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.